**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF
CONNECTICUT**

DONALD WAINRIGHT, ET AL,   CASE NO. 3:01~CV-02158 (WWE)

Plaintiffs v.

OSM COMMUNICATIONS, INC., ET AL,

    Defendants.   JANUARY 7, 2005

AFFIDAVIT OF DEBORAH RUSSO-WILLIAMS

I, DEBORAH RUSSO-WILLIAMS, of New Jersey, being duly sworn do hereby state under the penalties of perjury:

1) I am over me age of eighteen and believe in the obligations of an oath.

2) I am a plaintiff in the above captioned action, which is pending in the United States District Court for the District of Connecticut.

3) In reliance upon the promises of Robert and Israel Polansky, I entered into an employment agreement with OSM on or about August 3, 1996

4) In June of 1998, Israel Polansky personally met with and promised me that he would personally guarantee OSM's financial obligations.

5) Contrary to Israel Polansky's statements in his deposition are facts that I strongly and have direct personal knowledge of and dispute as follows:

   1) Israel Polansky may not have loaned Robert Polansky money, but Robert Polansky would use his ATM card to withdraw money from the OSM account

once Israel transferred money over. I **assumed** that money was for personal reasons, (it should be reflected on the bank statements from First Union and US Trust).

2) Israel Polansky was involved in most aspects of the company. He was involved in meetings with potential investors, he would calf to talk to Robert Polansky frequently and on a consistent and regular basis and Robert would call him whenever OSM needed money to pay bills and Israel would transfer the money directly to OSM's account

3) Israel Polansky was involved in almost every meeting during my entire tenure at OSM that I was aware of with potential investors in OSM He would come into Manhattan to attend the meetings. Israel met with me around July 1998 to discuss my continued employment with OSM. I had been offered and accepted another job offer and Israel met with me lotell me they were working on a deal with a potential investor and I should stay with OSM.

**Signed under pains and penalties of perjury, this** 7th   day of January 2005,

£ A- X
Deborah Russo-Willrams

Karen E. Healy
Comm. of the Superior Court

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

P.

DONALD WAINRIGHT, ETAL,    CASENO.3:01-CV-02158{WWE)

Plaintiffs v.

OSM COMMUNICATIONS, **INC., ETAL.,**

            Defendants.    JANUARY 7, **2005**

**AFFIDAVIT OF DONALD WAINRIGHT**

I, Donald Wainright, of 30 Vista Drive, **Easton.** Connecticut 06612 being duly sworn do hereby **state** under the penalty of perjury:

1) I am over the age of eighteen and believe in the obligations of an oath and I am a plaintiff in the above captioned action, which is pending in the United States District Court for the District of Connecticut.

2) In response **to Israel** Polansky's assertion in his deposition **Page 12, Line 2 et** seq.:

> "G. What time period... when did you first meet Donald Wainright or become aware of who Donald Wainright was?
>
> A. Uhm.... several years ago.
>
> Q When you first became aware of who Donald Wainright was, was he an employee of OSM?
>
> A. Uhm . Yes. "

P. 02

3) I met Israel when I was an employee of ISA in 1988.

4) Israel Polansky was an active member of the management and decision making of OSM Communications.

"O. Did you have any ever discussions that you can recall with Donald Wainright?

A (Israel Pnlansky): I never had any conversations with him as such." 5} Israel Polansky and I had numerous discussions and conversations between 1096 and 2000.

6) When I was hired in 1996 the company name was OSM Communications- There was a period prior to then that Robert was using the name On Site Marketing.

"Q. Okay, but the question to you is "is payroll one of the functions that you understood that was necessary to run the company?

A. {Israel Polansky): I didn't understand any of the functions of the company." 8) Israel made numerous trips to NY to visit the company. We (Deborah Russo-Williams and myself) spoke to him at length about what was going on at Ihe company. He spoke to clients and potential investors on a regular and consistent basis and exerted significant control over the corporation as he controlled all of the funding and kept pouring money in to make it run.

**Signed under pains and penalties of perjury, this 10   day of January 2005.**

———"S^X^JSB'V^v""
Donald Wainright

16th day of January 2005.

James E. Haley