**UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT**

DONALD WAINRIGHT, ET AL,          CASE NO. 3:01-CV-02158  (WWE)

PLAINTIFFS

V.

OSM COMMUNICATIONS, INC., ET AL.,

------------------------------------------------------------

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

BY:

ROBERT E. ARNOLD III, ESQ.
LAW OFFICES OF ROBERT E. ARNOLD LLC
ATTORNEY FOR PLAINTIFF
295 BASSETT AVENUE
NEW BRITAIN, CT 06051
(203) 777-3000 TEL
(860) 224-0400 FAX
FEDERAL BAR #CT18093

RESPECTIFULLY SUBMITTED TO THE COURT: JANUARY 10, 2005
COURTESY COPY TO HONORABLE HOLLY B. FITZSIMMONS

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES ………………………………………………3

TABLE OF AUTHORITIES ………………………………………………4

**I.    NATURE OF PROCEEDINGS AND FACTS OF CASE** ………………5

**II.    ARGUMENTS** ……..………………………………………....10

1  FAILURE OF ISRAEL POLANSKY TO PRODUCE TIMELY REQUESTED CHECKING ACCOUNT STATEMENTS AND COPIES OF CHECKS FRONT AND BACK for his personal account AT CITIZENS BANK OF MASSACHUSETTS
………………………………………………………………………10

A) ISSUE AS TO <u>AGREED</u> UPON CHECKING RECORDS WITHIN POSSESION AND CONTROL OF ISRAEL POLANSKY: (statements/checks to OSM 1996 TO 2000)
……………………………………………………………10

B) ISSUE AS TO <u>DIS-AGREED</u> UPON CHECKING ACCOUNT RECORDS WITHIN POSSESION AND CONTROL OF ISRAEL POLANSKY 1996 TO <u>PRESENT</u>.
……………………………………………………………14

C) ISSUE AS TO TAX RECORDS OF ISRAEL POLANSKY 1996 TO <u>PRESENT</u>.
……………………………………………………………33

2  FAILURE OF ROBERT POLANSKY TO PRODUCE TIMELY REQUESTED CHECKING ACCOUNT STATEMENTS
……………………………………………………………34

3  FAILURE OF OSM COMMUNICATIONS INC. TO PRODUCE TIMELY REQUESTED CHECKING ACCOUNT STATEMENTS
……………………………………………………………34

4  FAILURE OF ROBERT POLANSKY TO PRODUCE TIMELY REQUESTED US INCOME TAX RETURNS
……………………………………………………………35

5  FAILURE OF OSM COMMUNICATIONS INC. TO PRODUCE TIMELY REQUESTED CHECKING ACCOUNT STATEMENT
……………………………………………………………35

6  EXTENSION OF TIME WITH WHICH TO RESPOND TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.
……………………………………………………………35

**CONCLUSION** …..……………………………………………36

## **STATEMENT OF ISSUES**

1   SHOULD ISRAEL H. POLANSKY BE ORDERED TO PRODUCE:

A) Checking accounts statements and copies of checks front and back for loans to OSM Communications Inc. for 1996 TO 2000

B) Checking accounts statements and copies of checks front and back for 1996 TO PRESENT.

C) US Income Tax Returns for use of plaintiff's for the years 1996 TO PRESENT.

2   SHOULD ROBERT E. POLANSKY, INDIVIDUALLY, BE ORDERED TO PRODUCE REQUESTED CHECKING ACCOUNT STATEMENTS AND COPIES OF CHECKS FRONT AND BACK FOR YEARS 1996 TO PRESENT FOR HIS PESRONAL ACCOUNTS

3   SHOULD ROBERT E. POLANSKY, INDIVIDUALLY, BE ORDERED TO PRODUCE REQUESTED US PERSONAL INCOME TAX RETURNS FOR YEARS 1996 TO PRESENT

4   SHOULD ROBERT E. POLANSKY, FOR AND ON BEHALF OF OSM COMMUNICATIONS INC. BE ORDERED TO PRODUCE REQUESTED CHECKING ACCOUNT STATEMENTS AND COPIES OF CHECKS FRONT AND BACK FOR YEARS 1996 TO PRESENT FOR HIS CORPORATE CHECKING ACCOUNTS

5   SHOULD ROBERT E. POLANSKY, FOR AND ON BEHALF OF OSM COMMUNICATIONS INC., BE ORDERED TO PRODUCE US CORPORATE INCOME TAX RETURNS FOR YEARS 1996 TO PRESENT

6   EXTENSION OF TIME WITH WHICH TO RESPOND TO DEFENDANT'S (ISRAEL POLANSKY AND ANNE POLANSKY) MOTION FOR SUMMARY JUDGMENT.

**TABLE OF AUTHORITIES**

I.    CASE LAW CITED

a.    ZAIST V. OLSON, 154 CONN. 563, 573-74, 227 A.2D 552 (1967)
b.    EPPERSON V. RICHTER, SLIP COPY, D.CONN.2004, SEP 24, 2004
c.    *KILDUFF V. ADAMS, INC.,* 219 CONN. 314, , 593 A.2D 478 (1991).
d.    *SCRIBNER V. O'BRIEN, INC.,* 169 CONN. 389, 404, 363 A.2D 160 (1975).
e.    *STATEWIDE GRIEVANCE COMMITTEE V. EGBARIN,* 61 CONN.APP. 445, 454, 767
       A.2D 732, CERT. DENIED, 255 CONN. 949, 769 A.2D 64 (2001).
f.    *MILLER V. GUIMARES,* 78 CONN.APP. 760, 771, 829 A .2D 422 (2003).
g.    ALDRICH V. RANDOLPH CENT. SCH. DIST., 963 F.2D 520, 523 (2D CIR.1992)
h.    ANDERSON V. LIBERTY LOBBY, INC., 477 U.S. 242, 248, 106 S.CT. 2505,
       91 L.ED.2D 202 (1986)).
i.    BRYANT V. MAFFUCCI, 923 F.2D 979, 982 (2D CIR.1991).
j.    ERIE R. CO. V. TOMPKINS, 304 U.S. 64, 58 S.CT. 817, 82 L.ED. 1188 (1938);
k.    VAN DUSEN V. BARRACK, 376 U.S. 612, 639
l.    HOFFMAN WALL PAPER CO. V. CITY OF HARTFD, 114 CONN. 531, 159 A. 346
m.    CONNECTICUT CO. V. NY, N.H. & H.R. CO., 94 CONN. 13, 26, 107 A. 646
n.    ANGELO TOMASSO, INC. V. ARMOR CONST. & PAVING, INC.,
       187 CONN. 544, 560, 447 A.2D 406 (1982).
o.    SAPHIR V. NEUSTADT, 177 CONN. 191, 211, 413 A.2D 843 (1979)
p.    TOSHIBA AMERICA MEDICAL SYSTEMS, INC. V. MOBILE MED SYSTEMS, INC.,
       53 CONN.APP. 484, 492, 730 A.2D 1219 (1999);
q.    DAVENPORT V. QUINN, 53 CONN.APP. 282,03, 730 A.2D 1184 (1999);
r.    KREGOS V. LATEST LINE, INC., 929 F.SUPP. 600, 604 (D.CONN.)
s.    JOHNSON V. KINCHEN, 160 SO.2D 296, 299 (LA.).
t.    HUMPHREY V. ARGRAVES, 145 CONN. 350, 354, 143 A.2D 432;
u.    KULUKUNDIS V. DEAN STORES HOLDING , 132 CONN. 685, 689, 47 A.2D 183;
v.    ORTHOKINETICS V. SAFETY TRAVEL, INC., 806 F.2D 1565, 1579 (1986)
w.    SENSONICS, INC. V. AEROSONIC CORP., 81 F.3D 1566, 1575 (1996);
x.    FROMSON, 886 F.2D AT 1304;
y.    WATER TECHS. CORP. V. CALCO, LTD., 850 F.2D 660 (1988).

II.   STATUTORY/CODE/OTHER REFERENCED

a.     C.G.S.A. § 33-673(B).
b.    28 U.S.C. §1295(A)(1)

## I. <u>NATURE OF PROCEEDINGS AND FACTS RELATIVE TO BRIEF</u>

Plaintiffs in the above-entitled matter by their attorney hereby file this Brief:

A.      in support of the Plaintiff's pending Motion to Compel; and

B.      in response to the Court's Scheduling Orders dated November 30, 2004, December 13, 2004 and December 22, 2004; and

C.      in response to Attorney Michael Sulzbach's (counsel for Israel Polansky) submission of tax returns and letter dated January 6 2005; and

D.      in response to Robert E. Polansky's (Pro Se for defendants OSM Communications and himself individually) submission letter dated January 5 2005.

The plaintiffs have been frustrated since the onset of this case with the failure of the defendant's to cooperate with the Federal Rules of Evidence and to abide with the papers served on them. Particularly, the Plaintiff's have timely filed request for Documents as production from the defendants and they have almost completely ignored. Despite the agreement of counsel and the most recent orders of the court the plaintiffs still do not have even the most basic of financial information from the defendants.  The plaintiffs in particular do not have the information referenced as sent overnight on January 5, 2005 from the defendant Robert Polansky.

The court is asked in the pending Motion to Compel to order:

1.    <u>The defendant Israel H. Polansky to produce</u>:

    a.  his personal Citizens bank of Massachusetts checking
account statements and copies of checks front and back for
the years 1996 to the present,

    b.  verification of his personal US Tax returns to see if they
correspond to the information presented in a partial
response of copies of the Schedule K-1 corresponding to
1996 to 2000.

    c.  A previous request to submit to a deposition by written
questions be granted, such deposition would be after review
and approval by the court of the questions posed by plaintiff,
and ordered answered in fifteen days of submission.

2.    <u>The defendant Robert E. Polansky to produce</u>:

    a.  his personal Bank of Account Statements and copies of
checks front and back for the years 1996 to the present,

    b.  his US Tax returns for the years 1996 to present,

3.    <u>The defendant OSM Communications, by and through Robert E.
Polansky, to produce</u>:

    a.  Statements and copies of checks front and back for the
years 1996 to the present for the US Trust and First Union
Bank Account records,

    b.  the corporate US Tax returns for 1996 to present.

The defendants should not be able to benefit from their failure to produce such documents as they have been allowed to do. The defendant Israel Polansky has not even produced the Bank account number as ordered by the Court for his Citizens Bank account and as promised by counsel Michael Sulzbach. The central issue of piercing the corporate veil to warrant personal liability for Israel H. Polansky's control over the operation of OSM Communications comes from his financial control and constant funding of the operations of OSM Communications Inc. from his own testimony and that of his son's, as well as that of the two plaintiff's (See Plaintiff's Affidavits previously submitted and as submitted herewith).

Israel Polansky frequently (See deposition transcript Israel Polansky and Affidavit of Donald Wainright attached hereto) was in contact with OSM Communications and had numerous conversations with Donald Wainright and Robert Polansky and knew the operations as he funded the company exclusively "whenever it ran short" (Ibid). The issue of "control" of the company is a triable issue of fact. Denial to abide by the timely filed production requests attached to the deposition notices is highly inappropriate and may warrant sanctions, however the plaintiffs merely want the information and wish to proceed to trial. Without this timely requested discovery material the court is without the sufficient information to make a proper decision on the motion for summary judgment, thus the basis for the motion to compel. Plaintiff's counsel is entitled to this information and the defendants have frustrated their efforts through their constant dilatory action.

<u>In the alternative plaintiff's seek an order of the Court that:</u>

<u>As to Israel Polansky:</u>

a.        An order directing him to produce the requested records or whatever he has from Citizens Bank in Massachusetts for Israel Polansky's checking records years 1996 to present or pay the costs of obtaining same by the plaintiffs

b.        A previous request to submit to a deposition by written questions be granted, such deposition would be after review and approval by the court of the questions posed by plaintiff, and ordered to be answered in fifteen days of submission

<u>As to Robert Polansky:</u>

a.        An order directing him to sign a form 4506 for the years 1996 to 2003 for his US Income Tax returns or pay the costs of obtaining same by the plaintiffs

b.        A subpoena be issued for the requested records or whatever he has for his personal checking account statements for 1996 to present or pay the costs of obtaining same by the plaintiffs

<u>As to OSM Communications:</u>

a.    An order directing Robert E. Polansky, as President of OSM Communications Inc. to sign an IRS Form 4506 for the years 1996

to 2003 for his US Income Tax returns, and sanctions entered to

pay the costs of said

b.    An order directing Robert E. Polansky, as President of

OSM Communications Inc to produce the checking

account statements and copies of checks front and back

for first union and US Trust accounts for OSM

Communications Inc. checking records for 1996 to

present or pay the costs of obtaining same by the

plaintiffs

II.                **ARGUMENT: Issues Requiring a Response:**

1.                    **FAILURE OF ISRAEL POLANSKY TO PRODUCE TIMELY REQUESTED CHECKING ACCOUNT STATEMENTS and Copies of checks Front and Back for his personal account at Citizens Bank of Massachusetts**

A.        ISSUE AS TO ***AGREED*** UPON CHECKING RECORDS WITHIN POSSESION AND CONTROL OF ISRAEL POLANSKY: (checking accounts statements and copies of checks front and back for loans to OSM Communications Inc. 1996 TO 2000)

      Despite counsel's best efforts plaintiffs are unable to obtain the information that has been agreed to be produced from the defendants. Plaintiffs are still without the most basic information to prepare a subpoena such as an account number.  At a minimum, since the defendant Israel Polansky had agreed to appear for a continuation of his deposition after production of his checking accounts statements and copies of checks front and back for loans to OSM Communications Inc., the statements that are in his possession should be made available and any outside the corresponding time period as agreed (1996 to 2000 inclusive).(*See* below "Excerpt" of Israel Polansky Transcript). The plaintiff after receipt of this information should be allowed a deposition by written questions.

*"EXCERPT" OF TRANSCRIPT FROM ISRAEL POLANBSKY'S VIDEO DEPOSITION  OF ATTORNEY J. MICHAEL SULZBACH'S REPRESENTATIONS ON 3/29/04; PAGES 26 TO 29, lines 3 et seq.*

"<u>Attorney Sulzbach</u>: Since we're going to make the production that we've agreed to produce and continue this deposition…um…things are getting urgent back in Massachusetts and my client is very tired having been really ready to start this thing uh…in mid day and uh…so I think what we ought to do is adjourn this to the next period we'll make our production and, and uh… will get it down…and I'm hoping that we can do it here rather than Boston.

<u>Attorney Arnold</u>: he location is… is whatever's suitable for Mr. Polansky.

<u>Israel Polansky</u>: Well…

<u>Attorney Arnold</u>: I have no objection to…to being in Boston or here.

<u>Israel Polansky</u>: My wife uh…is not well…is a…and a…

<u>Attorney Sulzbach</u>: But…but we'll work that out …so let's…

<u>Attorney Arnold</u>: We'll work that out…we'll work that out through the attorneys.

<u>Attorney Sulzbach</u>: Yes. So, we'll agree on our production and we'll make that.

<u>Israel Polansky</u>: And I barely got away today, it's just that I had (inaudible)…

<u>Attorney Arnold</u>: Ca…can we, can we obviate the need for court intervention , and, and it's whatever statements he has the last three years…or, or, or…

<u>Attorney Sulzbach</u>: Well, any statement that relates to OSM.

<u>Israel Polansky</u>: To any monies lent from Citizens Bank to OSM.

<u>Attorney Sulzbach</u>:  to OSM.

<u>Attorney Arnold</u>: Correct. And any wires.

<u>Attorney Sulzbach</u>:  Yes, yes.

Attorney Arnold: Okay.  Fair enough. And we'll try to do that uh…within the next few weeks, whenever it's arranged through counsel.

Attorney Sulzbach: Yea, exactly, yea.

Attorney Arnold: Okay.  This concludes uh… this portion of deposition to be continued to a date that's agreed upon by both attorneys.

Attorney Sulzbach: And to that end, I think we're going to need a continuance on our summary judgment period once again.

Attorney Arnold: Um…Yea, well, we can speak about that off the record…I mean that's…I'm not sure even what the date was for the summary judgment.

Attorney Sulzbach: What it was before?  Uh…the beginning of April.

ATTORNEY ARNOLD: Beginning of April…Maybe we should uh…agree…

Attorney Sulzbach: Push back to the end of April?

ATTORNEY ARNOLD: Uh…well…if, if…

Attorney Sulzbach: I mean, I'll do it as fast as I can.

ATTORNEY ARNOLD: If you're going to provide me with the statements…

Attorney Sulzbach: Yep.

Attorney Arnold: Um…and he's made record, statements on the record uh, so, if you're going to limit to OSM I want to make sure there's no payments to Robert or Anne Polansky either of the …uh…defense.

Attorney Sulzbach: Those I really…I, I, I will go to the judge on those because he…

Attorney Arnold: Okay.  So go to the judge on that we'll just have a conversation and we'll ask him the necessity of those records and…

<u>Attorney Sulzbach</u>: If you tell me how they're relevant.  I mean he's, he's, he's Robert's father and Anne's father-in-law.

<u>Attorney Arnold</u>: They're defendants, they're all defendants in a federal lawsuit.

<u>Attorney Sulzbach</u>: Correct, but the lawsuit has a subject matter and tell me how this relates to that subject matter or is likely to lead to anything that's relevant.

<u>Attorney Arnold</u>: Piercing the corporate veil because there's no formality…uh…I'm, I'm not even going to recite that.  I'll talk about this, uh, off the record and with counsel and if it needs to go to, uh, motion work, I'd be more than happy to do that, so…

<u>Attorney Sulzbach</u>: Okay.

<u>Attorney Arnold</u>: So…uh, so we're going to continue this to a date to be set within the next two weeks plus or minus a few days, uh, what can be arranged through counsel.  And that concludes this portion of the deposition.

**OFF THE RECORD TIME: 2:50 P.M. END OF RECORDING**" (The delay of processing this videotape and transcript caused by the death of the notary/videograper, and this tape and transcript were not immediately available until now to present to the Court.)

B.    *ISSUE AS TO **DIS-AGREED** UPON CHECKING ACCOUNT RECORDS WITHIN POSSESION AND CONTROL OF ISRAEL POLANSKY 1996 TO **PRESENT**.*

Plaintiff's requested timely the production at a deposition of the checking account records (See Notices of Deposition for Israel Polansky dated March 2, 2004 and March 1 and Production "Schedule A" attached to end of Deposition Transcript.) Not only did Israel Polansky not inform plaintiff's that he wasn't going to produce them or object to producing certain items prior to the deposition, so counsel could discuss it ahead of time, the documents were never produced. Despite the fact that counsel agreed, however the other information was agree to be referred to the court for a determination as to whether the defendant Israel Polansky should produce non OSM Communications Ins. related checks and statements as they refer to the Citizens bank account in Massachusetts for the years 1996 to the present. Plaintiffs seek all of the statements and checks in their entirety including copies of checks front and back. Plaintiffs contend that this information is relevant as it is likely to lead to relevant evidence that payments were made to others, which were vendors, employees, associates and other parties with an interest in OSM Communications Inc. and that this evidence exhibits a personal commingling of corporate and personal funds which a fact finder would likely determine that there was no formality of the corporate entity. This lack of formality is a genuine issue of material fact. This evidence is likely to lead to relevant evidence which a fact finder would require to aid in

piercing of the corporate veil thus subjecting Israel Polansky to personal liability.

> A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party." ' *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) , **See also: Epperson v. Richter,** Slip Copy, D.Conn.2004, Sep 24, 2004

This information along with the evidence of control of the corporation and material participation of the decision making of the operations of the corporation, along with the elements of fraud (that Israel Polansky would guarantee the plaintiff's salaries stated by both Israel and Robert Polansky) to have justice scream for the production which was timely requested and ignored by the defendants. The court should order the production according to the Motion to Compel and any further orders as determined to be fair and just in these circumstances.

> "IT IS BLACK LETTER LAW THAT AN OFFICER OF A CORPORATION WHO COMMITS A TORT IS PERSONALLY LIABLE TO THE VICTIM REGARDLESS OF WHETHER THE CORPORATION ITSELF IS LIABLE." (FOOTNOTE OMITTED.) *KILDUFF V. ADAMS, INC.,* 219 CONN. 314, 331-32, 593 A.2D 478 (1991).
>
> IT IS WELL ACCEPTED THAT THE OFFICERS OF A CORPORATION ARE PERSONALLY LIABLE FOR THE CORPORATION'S TORTS COMMITTED IN VIOLATION OF THE PATENT LAWS IF THEY "PERSONALLY TOOK PART IN THE COMMISSION OF THE TORT OR SPECIFICALLY DIRECTED

OTHER OFFICERS, AGENTS OR EMPLOYEES OF THE
CORPORATION TO COMMIT THE TORTIOUS ACT."
ORTHOKINETICS, INC. V. SAFETY TRAVEL CHARIS, INC.,
806 F.2D 1565, 1579 (FED. CIR. 1986); ACCORD
SENSONICS, INC. V. AEROSONIC CORP., 81 F.3D 1566,
1575 (FED. CIR. 1996); FROMSON, 886 F.2D AT 1304;
WATER TECHS. CORP. V. CALCO, LTD., 850 F.2D 660
(FED. CIR. 1988).

This information would also provide relevant and admissible evidence of the
level of control that Israel Polansky had over the corporation and material
participation that should for the production

> "SIMILARLY, "[I]T IS ALSO TRUE THAT AN OFFICER OF A CORPORATION
> DOES NOT INCUR PERSONAL LIABILITY FOR ITS TORTS MERELY BECAUSE
> OF HIS OFFICIAL POSITION. WHERE, HOWEVER, AN AGENT OR OFFICER
> COMMITS OR PARTICIPATES IN THE COMMISSION OF A TORT, WHETHER
> OR NOT HE ACTS ON BEHALF OF HIS PRINCIPAL OR CORPORATION, HE IS
> LIABLE TO THIRD PERSONS INJURED THEREBY." SCRIBNER V, O'BRIEN,
> INC., 169 CONN. 389, 404, 363 A.2D 160 (1975).
>
> "THE ELEMENTS COMPRISING AN ACTION IN FRAUD OR FRAUDULENT
> MISREPRESENTATION ARE THAT: (1) A FALSE REPRESENTATION WAS
> MADE AS A STATEMENT OF FACT; (2) IT WAS UNTRUE AND KNOWN TO
> BE UNTRUE BY THE PARTY MAKING IT; (3) IT WAS MADE TO INDUCE THE
> OTHER PARTY TO ACT UPON IT; AND (4) THE OTHER PARTY DID SO ACT
> UPON THAT FALSE REPRESENTATION TO HIS INJURY." (INTERNAL
> QUOTATION MARKS OMITTED.) STATEWIDE GRIEVANCE COMMITTEE V.

EGBARIN, 61 CONN.APP. 445, 454, 767 A.2D 732, CERT. DENIED, 255 CONN. 949, 769 A.2D 64 (2001).

"OUR SUPREME COURT HAS HELD THAT WE MAY DISREGARD THE FICTION OF A SEPARATE LEGAL ENTITY TO PIERCE THE SHIELD OF IMMUNITY AFFORDED BY THE CORPORATE STRUCTURE IN A SITUATION IN WHICH THE CORPORATE ENTITY HAS BEEN SO CONTROLLED AND DOMINATED THAT JUSTICE REQUIRES LIABILITY TO BE IMPOSED ON THE REAL ACTOR ... ADDITIONALLY, THE COURT HAS AFFIRMED JUDGMENTS DISREGARDING THE CORPORATE ENTITY AND IMPOSING INDIVIDUAL STOCKHOLDER LIABILITY WHEN A CORPORATION IS A MERE INSTRUMENTALITY OR AGENT OF ANOTHER CORPORATION OR INDIVIDUAL OWNING ALL OR MOST OF ITS STOCK ... WHEN DETERMINING WHETHER PIERCING THE CORPORATE VEIL IS PROPER, OUR SUPREME COURT HAS ENDORSED TWO TESTS: THE INSTRUMENTALITY TEST AND THE IDENTITY TEST." (INTERNAL QUOTATION MARKS OMITTED.) MILLER V. GUIMARES, 78 CONN.APP. 760, 771, 829 A .2D 422 (2003).

The records are in the possession and control of the defendant Israel Polansky. (See below "Excerpt" as testified to by Israel Polansky.)

*"EXCERPT" OF TRANSCRIPT FROM ISRAEL POLANBSKY'S VIDEO DEPOSITION  OF ISRAEL POLANSKY AND ATTORNEY J. MICHAEL SULZBACH'S REPRESENTATIONS ON 3/29/04; Page 21, lines 13 et seq. to Page 22 line 21*

"Q. (By Attorney Arnodl): Mr. Polansky, do you have your bank account number at Citizens bank on you?  Do you have a bankcard or any records with you that will give us the bank account number for Citizens bank?

A. (By Israel Polansky): No I don't.

Q.  Okay. And when can you produce records associated with those amounts of monies wired or checks written to OSM from 1996 to the present? How long will it take you to produce those records?

A. Uhmmm. I am not sure, a week or two I suppose, more or less.

Q.  And do you have any objection as to providing checking account statements which reflect…

Attorney Sulzbach. That…wait a minute.  That…that's a decision you will make through counsel.

 Q. Do you…do you have checking account statements that you maintain at your house?

A. What's…what's…

Q. Do you have checking account statements…do you get statements every month from Citizens bank?

A. Yes.

Q. Okay. And in those statements will be reflected the amount of money that was lent to OSM?

A. Yes.

Q. And how far back do your statements go that you have at your house, do you recall?

A. Well, since the inception of the account as far as that goes, but uh…I'm not sure.

Q. Okay, and was that that before1996, did you open that account?

A. I don't really recall that..uhh…

Q.  Well, you testi…it was open in 1997 and '98, correct?

A. Well, I think so I'm not sure.

Q.  Well you said earlier that's the bank that you used to, to lend money or to buy stock in 1997 and'98…

A. Yes, yea, yea.

Q. So, the account was open at that point, correct?

A. Uh, probably, I'd have to check that.  I'd have to go back and look."

The defendants have intentionally mislead the plaintiffs and this court as they have contradicted each other, and the burden of demonstrating the relevance of the documents is aided by the lies told by the defendants herein, and their failure to produce relevant and requested documents and records in the possession and control of the defendant Israel Polansky.

Israel Polansky swears one day that he has not lent OSM Communications Inc. any money, and then he testifies that he wired OSM money in November or December of 2003. (See below excerpt)

*EXCERPT" OF TRANSCRIPT FROM ISRAEL POLANSKY'S VIDEO DEPOSITION    OF ISRAEL POLANSKY AND ATTORNEY J. MICHAEL SULZBACH'S REPRESENTATIONS ON 3/29/04; PAGE 14, LINES 14 ET SEQ. TO PAGE 16 LINE 19.*

**Q. And from 1997 to 1998 from that time period to today, it's your testimony that you've made no loans to Robert Polansky?**

**A. I never made loans to Robert Polansky.**

**Q. Did you ever tell Mr. Polansky that you would lend him money whenever he needed it for OSM?**

**A. I never lent him money…I never told him I would lend him the money.**

Q. Did you loan…but…but did you tell Robert that if OSM needed money you had money to loan him to help get the company started?

A. No…I…I don't understand the question.

Q. Okay I'll rephrase it.

A. If you could please.

Q. You made an investment in OSM…

A. Yes

Q. And Robert Polansky was running OSM, correct?

A. Yes.

Q.(By Attorney Arnold):  And if OSM needed money, because they were running short on money, would you have lent them more money or did you lend them more money?

Attorney Sulzbach: Why don't we do one question at a time?

Q. Did you lend them money?

A. (By Israel Polansky): From time to time I would lend them money, the bank, not…not him but to the company

**Q. When was the last time you lent OSM money?**

A. Uhm...now I don't understand that question…is it supposed to be to 2000 or what… or does it go to yesterday…

Q. To today?

Attorney Sulzbach: **When was the last time you lent OSM money**

**A. I would think four months ago.**

**Q. And how much did you lend?**

**A. 3 or 4,000 dollars perhaps.**

**Q. 3 to 4,000…?**

**A. Not to him…**

**Q. I understand…**

**A. Not to him…but the company I sent 3 or 4,000 dollars.**

Q. And what was the reason you sent that money to OSM?

**A. Because I was…just…the reason I sent the 3,000… apparently he asked for**

**money, he was running short, I sent the company money, he was running short, and I**

**sent him only three because I was done with him, I didn't want to lend any more.**

Q. And what was the reason …

Attorney Sulzbach: (inaudible)

A. (Inaudible)

Q. What was the reason that…ahh…who contacted you to send the money?

A. It had to be Robert Polansky.

**Q. Okay. And in the conversation you had with Robert Polansky…**

**A. Yes…**

**Q. …he asked you to lend him some money…or lend the company some money.**

A. No. He said he needed more money and he was running out of money and I told him

that was it.

Q. And what did he tell you the reason that he needed more money for…was for?

A. I guess he said he didn't…that the company didn't have any at that point.

**Q. And is the company still operating today?**

**A. The company is still alive today.**

**Q. And are you on the board of directors.**

21

**A. I am still on the board of directors**

Q. Do you recall a time period where OSM was being advertised for sale?

A. Uhm…I don't think it was ever advertised for sale.

**Q. Did you ever attend any board of directors meetings?**

**A. We a…there was so little…we attended board meet…meetings over the telephone.**

**We held them over the telephone**

Q. And who would participate in those board meetings?

A. In the ahh…meetings?

Q. In the meetings.

A. Robert and I, we were the only two directors.

Q. How often did those board meetings occur?

A. Once a month…excuse me…once a year.

Q. And who was the secretary for the board of directors?

A. Robert was the secretary, I believe.

Q. And were you ever asked to look at and approve minutes of the last board meeting or

was there not that formality?

A. Not really …there was no real formality about it."

Fortressing the assertion that the records are likely to lead to relevant

information is Deborah Russo –Williams statement:

"Israel Polansky may not have loaned Robert Polansky money, but

Robert Polansky would use his ATM card to withdraw money from

the OSM account once Israel transferred money over.  I assumed

that money was for personal reasons. (it should be reflected on the bank statements from First Union and US Trust)." (**See Affidavit of Deborah Russo-Williams** annexed hereto as **Exhibit D** and **Affidavit of Donald Wainright** annexed hereto as **Exhibit E**.)).

Israel Polansky goes on to say he never loaned Robert Polansky any money, OSM Communications Inc is still operating today and he is an active member of the Board of Directors, and that the Annual Board of Director's meeting occurred over the telephone (See above Excerpt by Israel Polansky). Presumably, Israel Polansky's memory on March 29, 2004 was better than it is from any attorney prepared affidavit signed in December or 2004 or January 2005.

Completely in juxtaposition to Israel Polansky is his son's (Robert Polansky) attempt to shield Israel from liability by covering for his father and lying about the corporation. Robert Polansky clearly represents the status of the corporation as being defunct. (See below excerpt). How can this be the case when Israel Polansky lent the company money in December 2003? Clearly the plaintiff's requests for records are relevant to this case and should be ordered produced as requested herein.

*"EXCERPT" OF TRANSCRIPT FROM ROBERT POLANSKY'S DEPOSITION ON 12/14/04; Page 31 lines 20 et seq. to Page 34 line 10.*

20      Q   (By Attonrey Arnold)  Well, isn't it true that you received money

21          as recently as this year?

23

22    A   (By Robert Polansky) Not to OSM.  Yes, I received money.

23    Q    From Israel Polansky?

24    A    Yes.

Page 32

1    Q    To assist you with funding your legal

2    defense in this case, correct, is one of the areas

3    that you needed funding for?

4    A    Hot necessarily.  Israel Polansky is ray

5    father and if he sent me money this year, I don't

6    remember what it was for one way or another.

**7    Q    Who paid the lawyers to represent OSM in**

**8    this action?**

**9    A    Robert Polansky paid them.  All checks were**

**10   written from OSM Communications.**

11   Q    And where did you obtain the money with

12   which to write a check to OSM?

13   A    Israel Polansky, as investor, would

14   periodically provide funds for the company.

15   Q    And he has provided money for OSM's defense

16   in this case, correct?

17   A    Money for OSM's defense in this case?  You

18   mean like right now?  Is that what you're talking

19   about?  I guess I'm a little confused.

20   Q    I'll rephrase the question.  You have a

21   lawsuit filed in 2001 against OSM, yourself, -your

22     father and Anne Polansky?

23     A    Yes.
24     Q    Attorney Sulzbach represents Anne and

Page     33

1     Israel Polansky, okay?

2     A    (Nodding.)

3     Q    There were lawyers involved in this case

4     who have withdrawn and there was money paid to those

5     lawyers.

6     A    I understand.  All funding for legal

7     defense is coming from Robert Polansky, who has

8     written all checks for the defense of OSM period.

9     Robert Polansky has written all the checks for the

10     defense.

11     Q    Where did you get the money to pay for

12     that?

13     A    From my own resources and from -- Mr.

14     Polansky no longer invests in OSM Communications.

15     He is sued personally, so people defend themselves

16     personally and write checks to defend themselves

17     personally.

18     Q    You were here when Israel Polansky gave a

19     deposition?

20     A    Right.

**21     Q    And in that deposition do you recall that**

22    Israel Polansky said that he had just recently given

23    you money to assist you with legal fees?

24    A    No.  I didn't hear anything of the sort.

Page    34

1    Mr. Polansky was quite tired at that point in time.

2    Q    Have you taken any money from Israel

3    Polansky, either personally or through OSM, from the

4    date the year 2000 to today?

5    A    No money has been given to OSM since 2000.

6    I've taken money personally, yes.

7    Q    Okay.  And is that money that you took

8    personally the money that you used to help pay for

9    lawyers?

10    A    Some of it, yes.


**"EXCERPT" OF TRANSCRIPT FROM ROBERT POLANSKY'S DEPOSITION
ON 12/14/04; Page 26 lines 13 et seq. to Page 28 line 7.**

13.    Q. (By Attorney Arnold):    I'm going to show you the June 10, 2000

14    waiver of notice of the meeting of shareholders of

15    OSM Communications, and at the bottom of that page

16    there's two signatures, one for Robert Polansky, one

17    for Israel Polansky?

18    A    Right.

19    Q    Did you sign your father's name on that

20    line?

21    A    I don't need to, no.

22    Q    Was he present in June 2000 to sign that

23    document?

24    A    Of course.  Well, I don't know if he was

1    present the exact day.  When the notes were

2    produced, he was asked to put his signature on it.

3    I don't know if it was produced the exact same day.

4    **Israel Polansky was the investor and I did once in a**

5    **while see him.**

6    Q    Do you recall the testimony of Israel

7    Polansky that the Board of Directors meetings all

8    occurred by the phone?

9    A    I don't recall that at all.

10    **Q    Did any Board of Directors meetings occur**

11    **over the phone?**

12    **A    I don't think so.  I think he actually came**

13    **into the city and we had a meeting right at the**

14    **company offices, which was once a year.  I mean,**

15    **after -- I think they were all at the office.  I can**

16    **go through that myself, but I think they were all at**

17    **corporate offices.**

18    **Q    Would you like to look at the minute book**

19    **Mr. Polansky?**

20    **A    Is that what they say?  Okay, yeah.**

21    **Office, yeah.**

22    Q    So, it's your testimony that he came into

23    New York in June of 2000 for a meeting?

24    A    Yes.

1    Q    And it's also your testimony that none of

2    the annual shareholder meetings occurred over the

3    phone?

4    A    No.  Not to my recollection.  I can't –

5    it's really what's stated there.  We're talking five

6    to ten years ago, to the best of my recollection at

7    this time.

Fortifying the plaintiff's contention that since Israel Polansky lent money to OSM Communications Inc. in December 2003, they must still be operating in contradiction to Robert Polansky, and lend credence to the theory that Israel Polansky is, and was, still in control of the Corporation.

However, completely contradicting themselves, the father son duo who have defrauded the plaintiffs out of their salaries earned and due, Robert Polansky testifies that the company is not still operating and has not operated since 2000.

Robert Polansky also testified that there were no accounts open as they were all closed in 2000! (See Excerpt below).

*"EXCERPT" OF TRANSCRIPT FROM ROBERT POLANSKY'S DEPOSITION
ON 12/14/04; Page 62 lines 20 et seq. to Page 34 line 10.*

(ROBERT POLANSKY, THE WITNESS reading from Production Request List):

20    THE WITNESS: No. 3 says, "A list

21    of all checking, savings, or any other account,

22    including investment accounts, with the account

23    numbers, of which you were or are a signatory,

24    including the name and address of the banks or

Page    63

1    issuers of the accounts, since 1996."

2    BY MR. ARNOLD:

3    Q    Okay. And you've produced no list of any

4    accounts?

5    A    It's very simple. U.S. Trust and First

6    Union.

7    Q    What's the address for U.S. Trust?

8    A    I don't know. You have checks.

9    Q    New York City?

10    A    Yeah, I think in New York City. I'll get

11    you the address. You have it right there.

12    Q    Okay, that's fair enough.

13    A    And First Union of Lemoyne Avenue, New

14    Jersey.

**15    Q    Are either of those accounts still active?**

**16    A    No.**

**17    Q    When were they closed?**

18  A    **The end of 2000 for OSM Communications.**

19  Q    That's with U.S. Trust?

20  A    No.  U.S. Trust was closed earlier.  I

21  think 1997.  Maybe 1998.  1998, '99, 2000, I think.

22  I recollect, to the best of knowledge, First Union.

23  Q    Okay.  And those are the only two bank

24  accounts that you used?

Page  64

1   A    Yes.

2   Q    When funds wired to you from Israel

3   Polansky, were they wired into one of those

4   accounts?

5   A    There might have been a third one for a

6   short period of time.  Doral, D-0-R-A-L, Bank.  A

7   very short period of time.

8   Q    In reference to the wire of any funds from

9   Israel Polansky, they would have gone into either

10  the U.S. Trust or the First Union account, most

11  likely?

12  A    Yes.

How can this even be possible if Israel Polansky wired money into his

account in December or January of 2003? How can this be possible if as in

the above Excerpt from Robert Polansky's own testimony that he paid all the

lawyers from OSM's Account.

"**7        Q    Who paid the lawyers to represent OSM in**

30

8    **this action?**

9    **A   Robert Polansky paid them.  All checks were**

10   **written from OSM Communications."**

What OSM account? If they were closed before the start of this lawsuit which was filed in 2001, then who paid them from the year 2000 to today? The corporate checking account for OSM Communications Inc., the personal accounts for Robert Polansky and the personal checking accounts for Israel Polansky are all relevant to the case at bar.

HELP! The plaintiffs request that the court order the timely requested information. The motion to compel was originally submitted to the court primarily because the defendants failed to meet their agreed upon production of records and failed to continue the deposition of Israel Polansky and Robert Polansky, and as defense made a motion to dismiss which needed a response. The plaintiffs at a minimum, even before the information presented herein, should be granted a chance to rebut the affidavits of the defendants by way of a deposition. Hindering the court's decision is a genuine dispute as to a material fact of whether the control of the corporation is beset in an individual (either Robert Polansky or Israel Polansky) and whether information requested for a time period from 1996 to 2004 is likely to lead to relevant evidence and should be produced have the and facts in a light most favorable for the non-moving party do not give rise to a

denial of had the opportunity to present the requested information

records are in the possession and control of the defendant Israel

Polansky. (See below "Excerpt" as testified to by Israel Polansky.)

*"EXCERPT" OF TRANSCRIPT FROM ISRAEL POLANSKY'S VIDEO*
*DEPOSITION  OF ISRAEL POLANSKY AND ATTORNEY J. MICHAEL*
*SULZBACH'S REPRESENTATIONS ON 3/29/04; Page 14, lines 14 et seq. to*
*Page 16 line 19.*

C.    *ISSUE AS TO **DIS-AGREED** UPON TAX RECORDS WITHIN POSSESION AND CONTROL OF ISRAEL POLANSKY 1996 TO **PRESENT**.*

Israel Polansky can still maintain a future benefit from the corporation from a tax benefit for the sale of his shares and a loss or gain associated with the sale of those shares. His tax returns are relevant to this proceeding as well and should be immediately produced as per the courts orders, and the court should subsequently release them for perusal by the plaintiff's. The plaintiffs represent that these records in their entirety will all have a demonstrable effect on the outcome of how much an impact the funding had on Israel Polansky's life and his finances. Israel Polansky lent almost $600,000 for the operation of OSM Communications Inc. It is not reasonable to assume that a reasonable investor or person would lend this amount f of money to anyone, even a son who just failed in a venture (In-Store Advertising, Inc.), co-named in a lawsuit for failure to pay wages by another employee, was investigated for fraud by the SEC without exuding control over how the money was spent and what the company did on a daily basis. (See **Exhibit A**: Lawsuit filed in United States District Court, Southern District of New York Alan Jones v. Robert, Israel and OSM Communications Inc), **Exhibit B**: Securities and Exchange Commission Litigation Release NO. 15031, dated September 4, 1996 and **Exhibit C**: Notice of Pendency document related to lawsuit filed in United States District Court, Southern District of New York against both Israel and Robert Polansky).

2. <u>**FAILURE OF ROBERT POLANSKY TO PRODUCE**</u>

<u>**TIMELY REQUESTED CHECKING ACCOUNT**</u>

<u>**STATEMENTS**</u>

The records are in the possession and control of the defendant Robert Polansky and or his agents. (See letter dated January 5, 2005 to court and Transcript as testified to by Robert Polansky, Supra).

In response to Robert Polansky's assertion that he has provided almost 10 – 12 inches of documents, other than the corporate stock certificate organizational book and a few other pages of extraneous information almost 98% of the documents assert his work product wherein he was attempting to sell the company, in aid to his own case and of no way responsive to the schedule he was served and requested to be produced.

3. <u>**FAILURE OF OSM COMMUNICATIONS INC. TO PRODUCE TIMELY REQUESTED CHECKING ACCOUNT STATEMENTS**</u>

The records are in the possession and control of the defendant Robert Polansky and or his agents. (See letter dated January 5, 2005 to court and Transcript as testified to by Robert Polansky, Supra).

4.  **FAILURE OF ROBERT POLANSKY TO PRODUCE**

    **TIMELY REQUESTED US INCOME TAX RETURNS**

The records are in the possession and control of the defendant Robert

Polansky and or his agents. (See letter dated January 5, 2005 to court

and Transcript as testified to by Robert Polansky, Supra).

5.  **FAILURE OF OSM COMMUNICATIONS INC. TO**

    **PRODUCE TIMELY REQUESTED CHECKING**

    **ACCOUNT STATEMENTS**

The records are in the possession and control of the defendant Robert

Polansky and or his agents. (See letter dated January 5, 2005 to court

and Transcript as testified to by Robert Polansky, Supra).

6.  **EXTENSION OF TIME WITH WHICH TO RESPOND**

    **TO DEFENDANT'S MOTION FOR SUMMARY**

    **JUDGMENT**

This issue should be scheduled for whenever compliance with

the order and ruling on the plaintiffs' pending motion to compel is

decided, and sufficient time to present more evidence to the court

should be granted. Currently the plaintiffs have been prejudiced by the

lack of compliance with discovery and the defendants' willful

misrepresentations to the court through their depositions and affidavits.

III.    **CONCLUSION**

The central issue of piercing the corporate veil to warrant personal liability for Israel H. Polansky's control over the operation of OSM Communications comes from his financial control and constant funding of the operations of OSM Communications Inc. from his own testimony and that of his son's, as well as that of the two plaintiffs'.

Denial to abide by the timely filed production requests attached to the deposition notices is highly inappropriate and may warrant sanctions, however, the plaintiffs merely want the information and wish to proceed to trial. Without this timely requested discovery material the court is without the sufficient information to make a proper decision on the motion for summary judgment, thus the basis for the motion to compel. Plaintiff's counsel is entitled to this information and the defendants have frustrated their efforts through their constant dilatory action and misrepresentations of the facts.

The inconsistencies and misrepresentations to the court merit the ordering of the full production as requested in the schedules attached to the notices of depositions, which have been ignored by the defendants herein. The court should not tolerate this type of willful disregard for the rules of evidence and should end this charade. The history of this case has been wrought with the defendants' lack of respect for the procedures and rules of evidence. This case has been dragging on and the default judgment obtained by the plaintiff's at the onset of this case is evidence of the defendants' attempts to ignore the procedures of this court.

Plaintiffs herein await the scheduling of a hearing to further argue their points in greater detail in this matter at the earliest convenience of the court.

THE PLAINTIFFS

BY:    *Robert E. Arnold III*

Robert E. Arnold, Esq.
Law Offices of Robert E. Arnold LLC
295 BASSETT STREET
NEW BRITAIN, CT 06051
Phone: (203) 777-3000
Fed. Bar No.  ct 18093

## CERTIFICATION

This is to Certify that a copy of the foregoing was delivered and or mailed, USPS postage prepaid, as certified below on January 11, 2005, to:

BY HAND DELIVERY TO COUNSEL FOR THE DEFENDANTS ISRAEL H. POLANSKY AND ANNE POLANSKY
J. MICHAEL SULZBACH
385 ORANGE STREET
NEW HAVEN, CT 06511
TEL. 203-781-0880 FAX.03-781-0861

BY MAIL TO DEFENDANT ROBERT E. POLANSKY AND TO DEFENDANT OSM COMMUNICATIONS, INC.:
C/O ROBERT RUBEN
9 ASPERTUCK LANE
WESTON, CT 06883

BY HAND DELIVERY TO
KAREN HALEY, ESQ.
419 WHALLEY AVE, SUITE 105
NEW HAVEN, CT 06510

original to:
United States District Court, District Of Connecticut
915 LAFAYETTE BOULEVARD
BRIDGEPORT, CONNECTICUT 06604
Phone: (203) 579-5861 Attn: Clerk's office

DATED: 1/11/05

*Robert E. Arnold III*
ROBERT E. ARNOLD, ESQ.
295 BASSETT STREET
NEW BRITAIN, CT 06051
TEL: (203) 777-3000
FED. JURIS. NO. CT18093