# EXHIBIT G



EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT made and entered into as of the Effective Date (as hereinafter defined), by and between OSM COMMUNICATIONS, INC., a Delaware corporation whose principal place of business is located at Suite 303, 444 Madison Avenue, New York, New York 10022 (the "Corporation"), and Donald M. Wainright (the "Executive").

IN CONSIDERATION of the mutual promises, covenants and agreements set forth below, it is hereby agreed as follows:

1. Employment and Term.

(a) The Corporation agrees to employ the Executive, and the Executive agrees to remain in the employ of the Corporation, in accordance with the terms and provisions of this Agreement for the period set forth below (the "Employment Period").

(b) The Employment Period shall commence on ~~October 21~~ November 4, 1996 (the "Effective Date") and shall continue until the close of business on ~~October 31~~ November 30, 1997.

(c) The Employment Period shall continue for successive periods of one year, unless the Executive or the Corporation shall have given the other notice of an intention not to continue the Employment Period at least ~~120~~ 180 days prior to the end of the initial one-year term, or any renewal term.

2. Duties of Executive.

(a) Title and Reporting. During the Employment Period, the Executive shall serve as Vice President-Operations of the Corporation. Unless otherwise directed by the President of the Corporation, the Executive shall report only to the President.

(b) Duties. During the Employment Period, and excluding any periods of vacation and sick leave to which the Executive is entitled, the Executive agrees to devote his full business time and attention exclusively to the business and affairs of the Corporation and to the discharge of his duties hereunder. The Executive shall perform his duties hereunder subject to the oversight and supervision of the President.

(c) Place of Employment. Executive's duties shall be discharged at the principal offices of the Corporation which shall be located within a 60-mile radius of Manhattan. Travel to other locations may be required, but shall be of a kind and frequency consistent with the position of the Executive.



3. Compensation.

The Executive shall receive the following compensation for his services to the Corporation hereunder:

(a) Salary. The Executive's annual base salary ("Annual Base Salary"), payable not less often than semi-monthly, shall be $100,000 commencing on the Effective Date. The President may, from time to time, direct such upward adjustments in Annual Base Salary as the President deems appropriate as a result of the Executive's performance including, without limitation, adjustments in order to reflect increases in the cost of living.

(b) Annual Cash Bonus. The Executive shall receive an Annual Cash Bonus in the amount of 25 percent of the Executive's Base Salary.

(c) Equity. The Executive shall be eligible to participate in all stock option programs applicable to other executives of the Corporation, as the same may be approved by the Board of Directors. The Executive shall be entitled to an aggregate of not less than 10% of the shares reserved for executives under such plan.

(d) Benefits. During the Employment Period, the Executive shall be entitled to participate in all benefit programs generally made available to senior executives of the Corporation from time to time, as determined by the Board of Directors, including but not limited to, medical, hospitalization, disability and life insurance plans, travel accident insurance and any pension or retirement plans or programs, provided that the Executive is eligible under the general provisions of any applicable plan or program of the Corporation. Premiums on any disability insurance provided by the Corporation for the benefit of the Executive shall be treated by the Company as compensation, and be taxable to the Executive. Nothing contained herein shall be construed to require the Corporation to establish any plans not in existence on the date hereof.

(e) Expenses. The Corporation agrees to reimburse the Executive for reasonable and necessary expenses, including those for travel and entertainment, properly incurred by him in the performance of his duties hereunder in accordance with policies established from time to time by the Corporation. The Executive shall account to the Corporation for such expenses.

(f) Vacation and Other Absences. During the Employment Period and so long as the Executive is employed by the Corporation, he shall be entitled to three (3) weeks paid vacation in the first year of the Employment Period and four (4) weeks in the second year, and subsequent years, if the Employment Period is renewed. Nor more than two weeks of vacation shall be taken consecutively.



The Executive shall also be entitled to such other paid absences whether for holidays, illness, or any similar purpose in accordance with the policies and practices of the Corporation in effect for executive officers from time to time.

(g) Moving and Relocation Expenses. The parties recognize that upon execution of this Employment Agreement and in consideration of the Corporation's offer of employment, the Executive will put his Michigan home on the market for sale.

The Corporation agrees to pay the reasonable documented relocation expenses incurred by the Executive in connection with such move, including the relocation of his personal property from Michigan to Connecticut, reimbursement of which expenses by the Corporation shall not exceed ~~$10,000~~. Said expenses may include, but are not limited to, packing costs, insurance costs, storage costs of personal belongings in Connecticut until such time as the Executive purchases a new home, transporting the Executive's two automobiles, and airfare from Detroit to White Plains Airport.

20,000

(h) Reimbursement for Possible Loss Incurred in Sale of Michigan Home. The Corporation shall reimburse the Executive for any documented loss incurred in the sale of his Michigan home, in a sum not to exceed $50,000. Said reimbursement, in the form of cash or a Corporation check, shall be delivered to the Executive no later than seven days after the sale date, subject to receipt and review by the Corporation of the calculation of such loss. "Loss", if any, shall be calculated by deducting the gross sale price from the sum of $263,760 plus the Executive's reasonable documented closing costs.

4. Termination of Employment.

(a) Death or Disability. The Executive's employment shall terminate automatically upon the Executive's death during the Employment Period and the Corporation shall pay to the estate of the Executive any accrued but unpaid Base Salary and unreimbursed business expenses, and shall also pay to his estate, when otherwise payable pursuant to this Agreement, a portion of the Bonus Amount which would otherwise have been payable with respect to the year in which death occurs, pro-rated based on the expired portion of such year, through the last day of the month of his death. If the Corporation determines in good faith that Disability (as defined below) of the Executive has occurred during the Employment Period, it may give to the Executive written notice in accordance with Section 8(b) of this Agreement of its intention to terminate the Executive's employment. In such event, the Executive's employment with the Corporation shall terminate effective on the 30th day after receipt of such notice by the Executive or his representative (the "Disability Effective Date"), provided, that within the 30 days after such receipt, the Executive shall not have returned to full-time performance of the executive's duties. For purposes of

\85184\31628.1

this Agreement, "Disability" shall mean a determination by the President that the Executive is unable to perform his usual duties for a period of at least 60 consecutive days or 90 days in aggregate during any 12-month period as a result of incapacity due to mental or physical illness.

If the Executive shall fully recover from my disability, the Board shall have the right (exercisable within thirty days after notice from the Executive of such recovery), but not the obligation, to restore the Executive to full-time service, in which event this Agreement shall continue in full force and effect in all respects. If the Board elects not to restore the Executive to full-time service, the Executive shall be entitled to obtain other employment. The Corporation shall be entitled to deduct from the Base Salary of the Executive during the Disability Period an amount equal to all disability payments received by him during the Disability Period from workmen's compensation, Social Security or disability insurance policies maintained by the Corporation. Unless the Executive has returned to full-time service prior to the end of the Disability Period, the Executive shall cease to be an employee of the Corporation at the end of the Disability Period.

(b) By the Corporation for Cause. The Corporation may terminate the Executive's employment during the Employment Period for Cause. For purposes of this Agreement, "Cause" shall mean (i) the conviction of the Executive for the commission of a crime, including, but not limited to, any act of fraud or embezzlement against the Corporation; (ii) action by the Executive involving malfeasance or negligence or failure to act by the Executive involving nonfeasance; or (iii) the failure by the Executive to follow directives of the President, or the failure to meet reasonable performance standards established by the President.

(c) Notice of Termination. Any termination by the Corporation for Cause shall be communicated by Notice of Termination to the Executive in accordance with Section 8(b) of this Agreement. For purposes of this Agreement, a "Notice of Termination" means a written notice which (i) indicates the specific termination provision in this Agreement relied upon; (ii) to the extent possible, sets forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of the Executive's employment under the provision as indicated; and (iii) if the Date of Termination (as defined in Section 4(d)) is other than the date of receipt of such notice, specifies the termination date (which date shall be not more than 30 days after the giving of such notice).

(d) Date of Termination. "Date of Termination" means (i) if the Executive's employment is terminated by the Corporation for Cause, the date of receipt of the Notice of Termination or any later date specified therein, as the case may be; (ii) if the Executive's employment is terminated by the Corporation other than

for Cause, the Date of Termination shall be the date on which the Corporation notifies the Executive of such termination; and (iii) if the Executive's employment is terminated by reason of death or Disability, the Date of Termination shall be the date of the death of the Executive or the Disability Effective Date, as the case may be.

5. Obligations of the Corporation upon Termination.

(a) Termination Other Than for Cause, Death or Disability. During the Employment Period, if the Corporation shall terminate the Executive's employment (other than in the case of a termination for Cause, death or Disability), termination in any such case is referred to hereinafter as "Termination"):

(i) the Corporation shall pay to the Executive in cash the sum of (1) the Executive's Annual Base Salary through the Date of Termination to the extent not theretofore paid and (2) any compensation previously deferred by the Executive (together with any accrued interest or earnings thereon) and any accrued vacation pay, in each case to the extent not theretofore paid (the sum of the amounts described in clauses (1) and (2) shall be hereinafter referred to as the "Accrued Obligations"). The amounts specified in this Section 5(a)(i) shall be paid within 30 days after the Date of Termination; and

(ii) beginning on the semi-monthly payment date next following the Date of Termination and on each semi-monthly payment date thereafter for a period of ~~four~~ six months (the period from such Date of Termination until the end of such ~~four-month~~ six-month period herein called the "Severance Period"), the Corporation shall pay to the Executive an amount equal to the semi-monthly installment of the Executive's rate of Annual Base Salary in effect as of such date of Termination.

(b) Termination by the Corporation for Cause. If the Executive's employment shall be terminated for Cause, the Corporation shall pay to the Executive his Annual Base Salary through the Date of Termination plus the amount of any compensation previously deferred by the Executive, in each case to the extent theretofore unpaid.

6. Covenants.

6.1 Confidential Matters. The Executive shall treat as confidential any proprietary, confidential or non-public information relating to the business or interests of the Corporation, including, without limitation, business and financial plans or projects of the Corporation, and any research data or results, advisers lists, processes or other work product developed

\85184\31628.1



by or for the Corporation, whether on the premises of the Corporation or elsewhere (collectively, "Confidential Information"). The Executive shall not disclose, utilize or make accessible in any manner or in any form any Confidential Information other than in connection with performing the services required hereunder, without the prior consent of the Corporation. The provisions of this Section 6 shall not apply to any Confidential Information which is, or at some later date becomes, publicly known under circumstances involving no breach hereof, or which is required to be disclosed pursuant to order or requirement of a court, administrative agency or other governmental body, provided that the Corporation has been given appropriate notice of such proceeding and an opportunity to contest such disclosure. All business records and other information relating to the business of the Corporation, papers, documents, correspondence or studies containing information relating to the Corporation, whether or not such information constitutes Confidential Information, made or kept by the Executive or in my possession or control shall be and remain the property of the Corporation, and shall be surrendered to the Corporation upon the termination of the Executive's employment. This Section 6 shall be construed as an agreement independent of any other provision herein contained, shall survive the expiration of the Employment Period, and shall be enforceable in both law and equity, including by temporary or permanent restraining order.

6.2 Offers of Employment. For a period of one year after the termination of the employment of the Executive, the Executive shall not, without the prior written consent of the Corporation, offer employment to any person employed by the Corporation.

6.3 Proceeds of Employment. The Corporation shall own all rights of every kind and character throughout the world in perpetuity in and to any material and/or ideas written, suggested or in any way created by the Executive within the scope of his employment hereunder, including, but not limited to, all copyrightable material created within the scope of his employment. The Executive shall execute and deliver to the Corporation such assignments or other instruments as the Corporation may require from time to time to evidence the Corporation's ownership of the results and proceeds of the services of the Executive.

7. Successors.

(a) This Agreement is personal to the Executive and without the prior written consent of the Corporation shall not be assignable by the Executive otherwise than by will or the laws of descent and distribution. This Agreement shall inure to the benefit of and be enforceable by the Executive's legal representative.

(b) This Agreement shall inure to the benefit of and be binding upon the Corporation and its successors and assigns, including, without limitation, any successors or assigns to which the Corporation may transfer all or substantially all of its stock or assets.

8. Miscellaneous.

(a) The captions of this Agreement are not part of the provisions hereof and shall have no force or effect. This Agreement may not be amended, modified, repealed, extended or discharged, and the covenants or terms hereof may not be waived, except by an agreement in writing signed by the parties hereto or in the case of a waiver, by the party waiving compliance.

(b) All notices and other communications hereunder shall be in writing and shall be deemed to be duly delivered when delivered in person to the other party, telecopied (provided that a copy thereof is sent the same day by first class United States registered mail) or mailed by first class United States registered mail, return receipt requested, postage prepaid, addressed to the parties at the following addresses or to such other address as a party shall hereafter specify by notice to the other party:

If to the Executive:

Donald Wainwright
4567 Windswept Drive
Milford, MI 48380

If to the Corporation:

OSM Communications, Inc.
444 Madison Avenue
Suite 303
New York, New York 10022
Attention: Robert E. Polansky

(c) A judicial determination of the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

(d) The Corporation may withhold from any amounts payable under this Agreement such Federal, state or local taxes as shall be required to be withheld pursuant to any applicable law or regulation.

(e) This Agreement contains the entire agreement and understanding of the Executive and the Corporation with respect to the subject matter hereof, and supersedes and terminates all prior agreements and understandings, all of which are merged herein. No



representation, promise or inducement has been made by either party that is not embodied in this Agreement, and neither party shall be bound by or liable for any alleged representation, promise or inducement not herein set forth.

(f) THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED ACCORDING TO, THE INTERNAL LAWS OF THE STATE OF NEW YORK AS APPLICABLE TO AGREEMENTS TO BE WHOLLY PERFORMED THEREIN. THE EXECUTIVE HEREBY CONSENTS TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK, COUNTY OF NEW YORK, AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND HEREBY WAIVES ANY CLAIM THAT NEW YORK COUNTY OR THE SOUTHERN DISTRICT OF NEW YORK IS AN INCONVENIENT FORUM.

(g) The parties agree that each has had the opportunity to consult with independent counsel of its/his choice to review the terms of this Agreement and that any risk of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation hereof.

IN WITNESS WHEREOF, the Executive and the Corporation have caused this Agreement to be executed as of the day and year first above written.

OSM COMMUNICATIONS, INC.

By: ______________________
Robert E. Polansky
President

10/4/96

______________________
Donald M. Wainright

10/7/96

\85184\31628.1