UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DONALD WAINRIGHT, ET AL., :
:
      Plaintiffs, : CIVIL ACTION NO.
: 3:01-CV-02158 (WWE)
v. :
:
OSM COMMUNICATIONS, INC., ET AL., :
:
      Defendants. : September 8, 2005

# JOINT MEMORANDUM IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
# OSM COMMUNICATIONS, INC. AND ROBERT E. POLANSKY

      The complaint in this action was brought by two (2) former employees of defendant OSM Communications, Inc. as well as the wife of one of the employees.

      The complaint assets four causes of action against defendants OSM Communications, Inc. Robert Polansky, Israel Polanksy and Anne Polansky who is Robert Polansky's wife.  Robert Polansky was an officer and minority (7%) shareholder of defendant OSM Communications.  Israel Polansky was the majority shareholder and loaned substantial sums of money to OSM Communications over a period of approximately four (4) years to help re-stage the company.  Anne Polansky is the wife of Robert Polansky and had absolutely no relationship to OSM Communications.

      In summary, the plaintiffs seek to recover unpaid wages, bonus and benefits from the defendants.  They allege that they were fraudulently induced to accept employment with defendant OSM Communications based on representations made to

them by defendants Robert Polansky and Israel Polansky. The plaintiffs further allege that the individual defendants purposely kept OSM Communications undercapitalized to reap personal benefits and shield themselves from liability for personal obligations.

At the time the plaintiff employees' employment with OSM Communications commenced, OSM Communications had just acquired a nationwide network of programmable L.E.D. signs. OSM Communications intended to be in the business of selling advertising space on the L.E.D. signs that would then be viewed by grocery store shoppers in the stores at the time they were making decisions about their purchases.

In 1996 when OSM Communications acquired its business from a company called Valissis Communications it also acquired the opportunity to offer employment to plaintiff Donald Wainright then a Valassis employee. After purchasing Valassis, Robert E. Polansky hired Deborah Russo-Williams, a former employee. Both plaintiffs knew the circumstances of Valassis and its purchase and were intimately familiar with the business operations. They also knew that Robert E. Polansky's purchase of the Valassis assetswas accomplished to revitalize the core business and that OSM Communications was a "start-up" company needing millions of dollars to establish a communications link with the signs. With this knowledge they still elected to enter into employment with OSM Communications.

In their complaint, Wainright and Russo-Williams claim to have received specific assurances about salary and bonus payments and thus Wainright sold his home in Michigan and did continue to faithfully perform his employment obligations. Separately, Russo-Williams alleges that Israel Polansky agreed to personally guarantee

2

OSM Communications' financial obligations to her and based upon those alleged assurances Russo-Williams did continue to be employed.

### The Complaint

There are 5 separate causes of action in the complaint. In the First Cause of Action Wainright claims to be due $256,637.01 arising out of OSM Communications alleged failure to pay wages, bonus, benefits and reimbursement of expenses. Wainright asserts that the individual defendants are liable due to the fact that OSM Communications is merely an alter ego and instrumentality of the individual defendants. In that same cause of action, Russo-Williams claims to be due $86,475.00 arising out of OSM Communications alleged failure to pay wages, bonus, benefits and reimbursement of expenses. Russo-Williams also asserts that the individual defendants are liable due to the fact that OSM Communications is merely an alter ego and instrumentality of the individual defendants.

In the Second Cause of Action plaintiffs allege that OSM Communications failure to pay wages at least once a month represents a violation of Section 31-71b of the Connecticut General Statutes. Wainright claims that OSM Communications failure to pay him was willful entitling him to damages of $256,637.01 plus reasonable attorneys fees and damages equal to twice the amount of wages, benefits and bonus found to be due. Once again Wainright asserts that the individual defendants are liable due to the fact that OSM Communications is merely an alter ego and instrumentality of the individual defendants. Similarly Russo-Williams claims that OSM Communications

3

failure to pay her was willful entitling her to damages of $54,475.00 plus reasonable attorneys fees and damages equal to twice the amount of wages, benefits and bonus found to be due. Russo-Williams asserts that the individual defendants are liable due to the fact that OSM Communications is merely an alter ego and instrumentality of the individual defendants.

In the Third Cause of Action Wainright alleges that to accept employment and remain an employee of OSM Communications both Israel Polansky and Robert Polansky personally guaranteed OSM Communications financial obligations to Wainright. Wainright claims Israel Polansky failed to honor his obligations to him and alleges that Israel Polansky is liable to him in the amount of $256,637.01. In this cause of action Russo-Williams alleges that to accept employment and remain an employee of OSM Communications both Israel Polansky and Robert Polansky personally guaranteed OSM Communications financial obligations to Russo-Williams. Russo-Williams claims Israel Polansky failed to honor his obligations to her and alleges that Israel Polansky is liable to her in the amount of $86,475.00.

In the Fourth Cause of Action Wainright alleges that he was fraudulently induced to accept employment with defendant OSM Communications by Robert Polansky and Israel Polansky misrepresenting the financial condition of OSM Communications. Wainright alleges that Israel Polansky and Robert Polansky were acting in their capacity as officers and directors of OSM Communications at the time they made the representations. Wainright alleges that as a result of the misrepresentations he has been damaged in the amount of $256,637.01 which damages

4

should be trebled. In this cause of action Russo-Williams alleges that she was fraudulently induced to accept employment with defendant OSM Communications by Robert Polansky and Israel Polansky misrepresenting the financial condition of OSM Communications. Russo-Williams alleges that Israel Polansky and Robert Polansky were acting in their capacity as officers and director of OSM Communications at the time they made the representations. Russo-Williams alleges that as a result of the misrepresentations she has been damaged in the amount of $86,475.00 which damages should be trebled.

In the Fifth Cause of Action, Wainright alleges that both Israel Polansky and Robert Polansky agreed to reimburse him for expenses incurred in relocating from Michigan to Connecticut. Wainright alleges that Israel Polansky and Robert Polansky were acting in their capacity as officers and director of OSM Communications at the time they made this promise. Wainright alleges he is entitled to reimbursement of $41,821.30. Plaintiff Janet Wainright claims entitlement to relief upon the sole allegation that she also owned the Michigan home.

**The Answer**

Defendants responded to the complaint by denying the material allegations of the complaint and asserting four counterclaims directed against plaintiffs Wainright and Russo-Williams. In the first counterclaim OSM asserted, among other things, that both plaintiffs breached their duty of good faith and loyalty to OSM, that by their conduct they harassed me, that they sought outside business opportunities which conflicted with their duties to OSM, that Wainright failed to install certain software

5

owned by OSM on OSM computers and that Wainright removed this software from OSM's premises, Wainright destroyed computer files and Russo-Williams set passwords on her computer blocking OSM from gaining access to the information on her computer all causing damages to the defendant OSM.

In the second counterclaim, OSM asserted that Wainright's actions constituted a breach of his employment contract and the loss of business income and business opportunities.

In the third counterclaim, OSM asserted that Wainright's actions constituted a theft of OSM's property and the loss of business income and business opportunities.

In the fourth counterclaim, OSM asserted that Russo-Williams actions depriving OSM of its property constituted negligence and the loss of business income and business opportunities.

It is well-settled that on a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of either law or fact to entitle the moving party to summary judgment. See *Fed. R. Civ. P. 56(c)*.

**Claim of Janet Wainright**

It must be noted that defendant Robert E. Polansky had no conversations with Janet Wainright. Robert E. Polansky made no promises to Janet Wainright. Janet Wainright is not an intended third party beneficiary of any communication that defendant Robert E. Polansky had with plaintiff Donald Wainright. Consequently, Janet Wainright's claim lacks merit, is not based upon any factual premise that supports

6

any known claim at law and summary judgment must be awarded to defendant Robert E. Polansky disposing of her cause of action.

**Claim of Donald Wainright**

As to plaintiff Donald Wainright ("prior to and hereafter referred to as Wainright"), he admitted in his deposition testimony that he was concerned about defendant OSM Communications being a start-up company and that based upon representations made solely by defendant Robert E. Polansky about defendant OSM Communications he resigned his position at Valassis In-Store Advertising, Inc.

Presumably that was all the due diligence that Wainright felt necessary to undertake with regard to his concerns about the new venture. Of course, this decision was made in light of the fact that Wainright had previously been an employee of In-Store Advertising, a company that was run by Robert E. Polansky at the time of Wainright was employed there.

Wainright also admitted that at the height of OSM's business that in addition to Robert E. Polansky there were only three other employees, Wainright, Russo-Williams and Dan Georgetti. Eventually Mr. Georgetti left leaving only Wainright and Russo-Williams as the employees. To be blunt, it did not take a genius to realize that not only was OSM Communication's business not growing but rather that it was slowing as contracts with supermarket chains were expiring and not being renewed because of the failure of OSM Communications to obtain the required outside funding necessary to maintain and/or refurbish the equipment installed then neglected by Valassis. Indeed

it was one of the major roles of both Wainright and Russo-Williams was to assist in the process of raising the millions of dollars necessary to keep it functioning. Their continued presence demonstrated to potential investors that OSM Communications had an existing organization and just needed an infusion of cash to get up and running again.

At no time were either Wainright or Russo-Williams indentured servants of OSM Communications. They were always free to seek other employment if they were not happy, if they were unsure of the corporation's future or otherwise concerned about receipt of their salary.

But more importantly, Wainright executed a contract with and Russo-Williams worked for a corporation based in New York and performing their duties in New York. All of their payroll taxes were paid to the City and State of New York. There is no nexus with Connecticut making any Connecticut employment statute simply not applicable to the facts of the case at bar.

Wainright's employment contract was entered into with defendant OSM Communications, Inc. on November 4, 1996. Rather than pay Wainright his moving expenses, in June 1997 I sent Wainright a memorandum increasing his salary by $2,000.00 per month and advising that the company would pay no bonuses until new venture capital could be found. A condition of the change to the employment contract was Wainright's acceptance of the increased salary. Wainright accepted the increase and continued to work with his employment modified.

8

Wainright's only legitimate claim was to get paid on a timely basis. It has been established that defendant OSM Communications did not always have the money to do that on a timely basis but that OSM Communications did indeed make payment although admittedly sometimes late. OSM communications continued to make payments to the plaintiffs until both plaintiffs ceased giving their full time commitment to the business and walked out on OSM Communications. When the plaintiffs left the company they sabotaged the OSM Communications computers that they were given to use by putting password codes into the computers thereby precluding Robert E. Polansky from having access to the computers. The also took operating software that belonged to the company from the company's premises. By doing so the plaintiffs effectively shut down the business and prevented it from securing replacement employees who could learn the business in their absence. Their rationale was that they were justified in harming the equipment. To the contrary, this wrongful conduct alone precludes them from any recovery in this action.

**Claim of Deborah Russo-Williams**

Russo-Williams was nothing more than an at-will employee whose employment was confirmed in a memorandum written by me on defendant OSM Communications stationary. She too was familiar with Robert E. Polansky having been an employee of In-Store Advertising when Robert E. Polansky ran the company.

9

Argument

There is no question that both Wainright and Russo-Williams were valuable employees whose continued involvement was important to the corporation. But no one – neither Israel Polansky nor Robert E. Polansky was in a position to personally guarantee payment of funds to OSM Communications, Wainright or Russo-Williams.

As has been documented in discovery, Israel Polansky lent OSM Communications in excess of $1,100,00.00. No less than $747,036.00 or almost seventy percent (70%) of these funds was paid to Wainright and Russo-Williams in salaries and benefits.

The entire lawsuit is directed at Israel Polansky the only person with personal assets. He did nothing to compromise his passive investor status and Robert E. Polansky did nothing to overreach his position as President of defendant OSM Communications. In fact, Israel Polansky was not an officer of the company, never received a financial benefit – except for tax losses on his income tax – and he never signed a company check to pay a company obligation.

The plaintiffs can point to no action other than their own feelings of entitlement and their desire to convince the court that they are entitled to money they did not earn is the sole basis of this lawsuit. Robert E. Polansky wrote to Wainright and Russo-Williams complaining about their lack of commitment to their positions which he concluded resulted in a legitimate termination of their employment.

It is respectfully submitted that apart from Donald Wainright's residence the claims brought in the instant action bear no relationship to Connecticut law whatsoever.

The plaintiffs worked for a corporation with its offices situated in the State of New York. The plaintiffs conducted their duties for the corporation in the corporation's offices in the State of New York. But perhaps most significantly, Wainright's employment contract states:

> 8(f)  THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED ACCORDING TO, THE INTERNAL LAWS OF THE STATE OF NEW YORK AS APPLICABLE TO AGREEMENTS TO BE WHOLLY PERFORMED THEREIN.  THE EXECUTIVE HEREBY CONSENTS TO THE JURSIDICTION OF THE COURTS OF THE STATE OF NEW YORK, COUNTY OF NEW YORK, AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND HEREBY WAIVES ANY CLAIM THAT NEW YORK COUNTY OR THE SOUTHERN DISTRICT OF NEW YOPRK IS AN INCONVENIENT FORUM.

Thus not only is the District Court of Connecticut the wrong jurisdiction to decide this dispute there is, by Wainright's prior agreement and consent, no basis for the court to apply Connecticut statutes or law to decide the case at bar. Clearly, defendants are entitled to summary judgment, as a matter of law on the second cause of action.

For succeed on their claim that Robert E. Polansky personally guaranteed their salaries they will need to show that the promise was made in writing. New York Law is clear on this issue. New York General Obligations Law § 5-701 (a)(1) and (a)(2) set forth in pertinent part:

11

### § 5-701. Agreements to be in writing

a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime;

2. Is a special promise to answer for the debt, default or miscarriage of another person;

There is no such writing and plaintiffs' claims made out of whole cloth cannot overcome this burden. Thus defendant Robert E. Polansky is entlted to summary judgment on the claims seeking personal guarantees of plaintiffs' salary payments.

In order for the plaintiffs to successfully pierce the corporate veil and seek personal liability against Robert E. Polansky they must establish through documentary evidence that Robert E. Polansky so totally dominated OSM Communications that he abused the privilege of doing business as a corporation and that he used this domination and control to commit an injustice against the plaintiffs. See *Litvinsky v. May Entertainment Group, Inc.,* 4 Misc. 3d 1028(A) (Sup. Ct. 2004). OSM Communications offered the plaintiffs employment. That is all. As time went on and the business did not pick up it was not incumbent on the corporation, its officers or shareholders to continue to guarantee continuing payments of salary to the plaintiffs. Employment is not an entitlement, as these plaintiffs would have this court hold.

It is beyond the pale to suggest that Robert E. Polansky was not entitled to take money form the corporation to do, that which was necessary to entertain and attract

new investors. The money that Israel Polansky put into the business was intended to keep the corporation minimally functional. And, as stated above the plaintiffs received no less than $747,036.00 of those monies. This represents approximately seventy percent (70%) of the funds invested in the company and direct loss to Israel Polansky when funding for the company could not be secured.

At no point have the plaintiffs demonstrated – nor can they demonstrate – that Mr. Polansky disregarded the corporate formalities. *Lupier v. Bartolomeo,* 5 Misc. 3d 1025(A) (Sup. Ct. 2004).

As a result, defendants Robert E. Polansky and OSM Communication are entitled to the following relief:

(a)     Robert E. Polansky is entitled to summary judgment on the first cause of action due to a complete failure of the plaintiffs to prove that OSM Communications was merely an alter ego and instrumentality of the individual defendant. The corporate defendant paid the plaintiffs' salaries for four (4) years as well as paying their taxes to the United States of America, the State of New York and the City of New York.

(b)     Robert E. Polansky and OSM Communications, Inc. are entitled to summary judgment on the second cause of action, as there is no legal basis for the court to apply Connecticut's own statutes to employment circumstances that occurred solely within the State of New York.

(c)     Robert E. Polansky is entitled to summary judgment on the third cause of action due to the fact that New York law requires that one who answers for the debt of

13

another must do so in writing.  Plaintiffs' parole evidence, made up out of whole cloth does not meet this standard.

(d) Robert E. Polansky is entitled to summary judgment on the fourth cause of action due to the fact that plaintiffs received the benefit or their bargain and suffered no damage by accepting employment with defendant OSM Communications.

(e) Robert E. Polansky is entitled to summary judgment on the fifth cause of action due to the fact that plaintiffs have set forth no admissible evidence that Robert E. Polansky individually took on the corporate obligation as alleged by the plaintiffs, which obligation, under New York Law had to be in writing.

(f) OSM Communications is entitled to summary judgment on liability on the first counterclaim due to plaintiffs' admissions as recounted above in paragraphs 79 and 80 of the affidavit of Robert E. Polansky in support of the motion sworn to the 8th day of September 2005.

(g) OSM Communications is entitled to summary judgment on liability on the second counterclaim due to plaintiffs' admissions s recounted above in paragraphs 79 and 80 of the affidavit of Robert E. Polansky in support of the motion sworn to the 8th day of September 2005.

(h) OSM Communications is entitled to summary judgment on liability on the third counterclaim due to plaintiffs' admissions s recounted above in paragraphs 79 and 80 of the affidavit of Robert E. Polansky in support of the motion sworn to the 8th day of September 2005.

(i)     OSM Communications is entitled to summary judgment on liability on the fourth counterclaim due to plaintiffs' admissions s recounted above in paragraphs 79 and 80 of the affidavit of Robert E. Polansky in support of the motion sworn to the 8th day of September 2005.

WHEREFORE it is respectfully submitted that defendant Robert E. Polansky is entitled to summary judgment in his favor as there is no real factual dispute or question of law involved in this matter.  In addition thereto, defendant Robert E. Polansky requests that this court award him his reasonable attorneys fees and the costs and disbursements incurred in the defense of this action.

> For the Defendants Robert E. Polansky
> And OSM Communications, Inc.
>
> _____
> Michael P. Goldsmith, Esq.
> 38 West 21st Street
> 5th Floor
> New York, NY 10010-6977
> (212) 677-4441 ext. 18
> (212) 677-6478 Fax
> Federal Bar No. phv0219
> michael.p.goldsmith@verizon.net

15

CERTIFICATE OF SERVICE

This is to certify that on this 8th day of September 2005, a copy of the foregoing Defendants Memorandum in support of Summary Judgment on behalf of Robert E. Polansky and OSM Communications, Inc. was deposited in the United States mail, first-class, postage prepaid, addressed to:

Robert E. Arnold, Esq.  
Law Offices of Robert E. Arnold, LLC  
205 Church Street, Suite 310  
New Haven CT 06510-1805  

J. Michael Sulzbach, Esq.  
385 Orange Street  
New Haven, CT  06511  

_____  
Michael P. Goldsmith, Esq.