UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONALD WAINRIGHT, ET AL., | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs; | : | 3:01-CV-02158 (WWE) |
| | : | |
| V. | : | |
| | : | |
| OSM COMMUNICATIONS, INC., | : | |
| ET AL; | : | |
| | : | September 8, 2005 |
| Defendants; | : | |

### DEFENDANTS OSM COMMUNICATIONS, INC. AND ROBERT E. POLANSKY'S LOCAL RULE 56(a)1 STATEMENT

Defendants, OSM Communications, Inc. and Robert E. Polansky hereby submit a listing of facts that Defendants contend are not in dispute and are based upon admissible evidence. In addition to the items that Defendants conceded as not in dispute in Plaintiffs' Local Rule 56(a)1 statement, Defendants' assert the following:

**FACTS**

1. Plaintiff Donald Wainright's contract is governed by New York Law. See paragraph 8(f) of the Wainright Employment Contract submitted in support of Plaintiffs' motion for summary judgment which states:

> 8. (f)  THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED ACCORDING TO, THE INTERNAL LAWS OF THE STATE OF NEW YORK AS APPLICABLE TO AGREEMENTS TO BE WHOLLY PERFORMED THEREIN.  THE EXECUTIVE HEREBY CONSENTS TO THE JURSIDICTION OF THE COURTS OF THE STATE OF NEW YORK, COUNTY OF NEW YORK,

AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND HEREBY WAIVES ANY CLAIM THAT NEW YORK COUNTY OR THE SOUTHERN DISTRICT OF NEW YORK IS AN INCONVENIENT FORUM.

See Exhibit "B" attached to the affidavit of Robert E. Polansky sworn to the 8th day of September 2005.

2. Plaintiff Russo-Williams was an at-will employee in the State of New York. See deposition Testimony of Plaintiff Russo-Williams dated March 1, 2004, page 23, Lines 24-25 and page 24, lines 1-5 and Exhibit "A" attached hereto.

3. Plaintiffs were discharged for cause. See memoranda dated December 6, 2000 attached as Exhibit "E" to the affidavit of Robert E. Polansky in Support of his motion for summary judgment.

4. When Donald Wainright left the OSM Communications premises for the last time, he admitted that he had password protected his company computer and did not give the password to OSM Communications thereby precluding OSM Communications from accessing the corporate information contained on the computer. See deposition testimony of Donald Wainright dated February 10, 2004 Page 89 Lines 14-16 attached as Exhibit "G" to the affidavit of Robert E. Polansky in Support of his motion for summary judgment.

5. Plaintiff Donald Wainright admitted failing to turn over to OSM Communications any software or discs belonging to OSM Communications. See deposition testimony of Donald Wainright dated February 10, 2004 Page 88 Lines 10-17

attached as Exhibit "G" to the affidavit of Robert E. Polansky in Support of his motion for summary judgment.

6. When Deborah Russo-Williams left OSM Communications she admitted that she had password protected his company computer and did not give the password to OSM Communications thereby precluding OSM Communications from accessing the corporate information contained on the computer. (Deposition of Deborah Russo-Williams dated March 1, 2004 Page 59 Lines 1-14 attached as Exhibit "H" to the affidavit of Robert E. Polansky in Support of his motion for summary judgment.

        FOR THE DEFEDANTS
        OSM COMMUNICATIONS, INC.
        And ROBERT E. POLANSKY

        By: _____
        Michael P. Goldsmith, Esq.
        38 West 21st Street – 5th Floor
        New York, NY 10010-6977
        Telephone: (212) 677-4441 ext.18
        Fed. Bar No. phv0219
        Attorney for Defendants
        OSM Communications, Inc. and
        Robert E. Polansky

Case 3:04-cv-02558-WWE    Document 124    Filed 09/08/2005    Page 3 of 9

CERTIFICATE OF SERVICE

This is to certify that on this 8th day of September 2005, a copy of the foregoing Local Rule 56(1) Statement was deposited in the United States mail, first-class, postage prepaid, addressed to:

Robert E. Arnold, Esq.  
Law Offices of Robert E. Arnold, LLC  
205 Church Street, Suite 310  
New Haven CT 06510-1805

J. Michael Sulzbach, Esq.  
385 Orange Street  
New Haven, CT 06511

_____  
Michael P. Goldsmith, Esq.

4

EXHIBIT A

19  first telephone conversation, if you can recall?
20      A.  Pretty much that he had bought the company
21  back from Valassis and he was hiring.... trying to
22  rehire some of the key people that had been working
23  for the company for a long time, and I was one of the
24  people he wanted back and if I'd be interested in
25  working for him again.

DEL VECCHIO REPORTING
203-245-9583

23

1   Q.  Did he say anything else?
2   A.  Not that I remember.
3   Q.  And at that point what did you say?
4   A.  I think I told him I'd be interested in
5   working for him but I didn't know if he had the money
6   to pay us and stuff.  I was kind of concerned if he
7   had investors.  He told me that he had investors and I
8   wasn't.... Oh, I don't know.  I can't remember
9   exactly what I said.
10  Q.  Let's go back to what he said.  Withdrawn.
11      Did you, in this first conversation, voice
12  to Mr. Polansky any concerns about investors or the
13  financial wherewithal of his new company?
14  A.  Yes.
15  Q.  And what did you say?
16  A.  I don't remember exactly what I said.  I
17  think it was pretty much I wanted to find out if he

18  had investors and a way to pay us, and he said that he
19  did.
20  Q.  Was there any more to that discussion?
21  A.  No.
22  Q.  What happened next; what was the next
23  communication with Mr. Polansky?
24  A.  I think at that point he put together an
25  offer, the contract, and faxed it over to me.

```
                DEL VECCHIO REPORTING
                   203-245-9583
```

                                                24

1   Q.  Showing you now Exhibit 2, is that the
2   document that Mr. Polansky faxed to you?
3   A.  Yes.
4   Q.  And when did you commence to work for OSM?
5   A.  I believe it was the end of August of '96.
6   Q.  And other than what you told us about your
7   communication with Mr. Polansky and Exhibit 2, was
8   there anything more at that time by way of
9   communication or understanding having to do with the
10  terms of your employment at OSM?
11  A.  No.
12  Q.  Just what you've told us?
13  A.  Yes.
14  Q.  Now, you have produced as Exhibit 3 a
15  memorandum to Bob Polansky having to do with
16  consulting for ISA/OSM Communications.  Now, with
17  regard to this memorandum, was that prepared pursuant

18  to your new employment with OSM?
19      A.   This?
20           MR. RILEY:  By "pursuant", I'm not sure I
21  understand the question.
22           MR. SULZBACH:  Well, she's testified that
23  she started to work for OSM, she did it pursuant to
24  Exhibit 2.  So my question is: was Exhibit 3 prepared
25  by her in the course of her employment as she's just

                    DEL VECCHIO REPORTING
                       203-245-9583

                                                    25

1   described it.
2       A.   This is work that I did for OSM before I
3   came to work for him in the city.  Like I had the
4   contract from August but I still needed to resign from
5   my current job, and I think he needed some of these
6   things taken care of, so I worked from home and sent
7   him a bill for it.
8       Q.   (By Mr. Sulzbach)  So I've got it straight.
9   You agreed to the terms of employment as shown in
10  Exhibit 2 but you didn't start as of the date of
11  Exhibit 2, is that right?
12      A.   Right.
13      Q.   Because you were still employed by your old
14  employer?
15      A.   Um-hum.
16      Q.   That's "yes"?

```
17   A.   Yes.
18   Q.   And then Mr. Polansky asked you to perform
19   certain tasks for OSM, is that right?
20   A.   Yes.
21   Q.   Before you started as an official employee?
22   A.   Yes.
23   Q.   And you agreed to do that?
24   A.   Yes.
25   Q.   You sent him a bill for those tasks, is that
```

DEL VECCHIO REPORTING
203-245-9583

26

```
1    correct?
2    A.   Yes.
3    Q.   And that's what Exhibit 3 is, that's the
4    bill?
5    A.   Yes.
6    Q.   Did he pay that or did OSM pay that?
7    A.   Yes, OSM paid it.
8    Q.   When did you really come on board at OSM?
9    A.   I'm not sure.  I thought it was the end of
10   August but now this bill is from September, so I know
11   I did some work from home for him in September but I'm
12   not sure if I was a full-time employee at that point
13   or not.
14   Q.   But sometime after September you were to
15   start?
16   A.   Yes.
```