UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONALD WAINRIGHT, <u>ET</u> <u>AL</u>., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:01-CV-02158 (WWE) |
| v. | : | |
| | : | |
| OSM COMMUNICATIONS, INC., <u>ET</u> <u>AL</u>., | : | |
| | : | |
| Defendants. | : | November 21, 2005 |

**JOINT REPLY MEMORANDUM OF DEFENDANTS
OSM COMMUNICATIONS, INC. AND ROBERT E. POLANSKY
IN FURTHER OPPOSTION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

The defendants, OSM Communications, Inc. and Robert E. Polansky jointly submit this Reply Memorandum in further opposition to plaintiffs' motion for summary judgment and in further support of defendants' motions for summary judgment. It is respectfully submitted that plaintiffs' submission dated October 25, 2005 raises no genuine issues of fact or law but rather attempts to obfuscate the issues in a futile attempt to avoid summary judgment. When the court wades through the innuendo and misconstruction of the facts it will conclude that there are no genuine issues of fact.

**FACTS**

Responding specifically to the plaintiffs additional assertions contained in their October 25, 2005 submission.

1. It has always been an undisputed fact that defendant Israel Polansky loaned money to defendant OSM Communications, Inc.

2. It has been repeatedly asserted that defendant Israel Polansky testified incorrectly when he stated that he loaned money to defendant OSM Communications, Inc. in 2004. He was 94 years old and tired at the time of the testimony and simply got his dates wrong. There is no independent documentary evidence to support his misstatement.

3. Again it is an undisputed fact that defendant Israel Polansky loaned money to defendant OSM Communications, Inc. highlighting the words "open" or "ran short" does not in any way change or permit a different interpretation of this fact.

4. As demonstrated in defendants' moving papers, defendant Israel Polansky was the investor in defendant OSM Communications however the company did earn money from contracts with clients such as Citibank, TDI and Viacom during OSM operations. (See deposition of Robert E. Polansky dated December 14, 2004).

5. That some of defendant OSM Communications' materials and supplies were warehoused in Connecticut is not disputed.

6. In this paragraph, plaintiff Donald Wainright formally admits that he was always aware that it was defendant Israel Polanksy who was the investor for defendant OSM Communications.

7. Plaintiffs finally admit that that the initial funding received by defendant OSM Communications came from defendant Israel Polansky as the investor in defendant OSM and a large portion of those funds was allocated by defendant Robert Polansky to pay bills including plaintiffs' wages and benefits.

8. It is not disputed that defendant Israel Polansky was copied on a memorandum dated June 2, 1997 regarding the plaintiff Wainright's salary.

9. During the course of discovery defendants testified and produced defendant OSM bank records and tax returns indicating that it ceased doing business in the year 2000.

10. Nothing can be inferred or implied from defendant Ann Polanksy's personal tax returns. The facts are that Mrs. Polansky and her sisters were the beneficiaries of a trust established by their late father and administered by her mother during the relevant period. Assets from the trust paid her living expenses. Defendants take this opportunity to remind the court that defendant Ann Polansky executed an affidavit that was filed with the court that she never received any assets, checks, or compensation in any form or of any kind from defendant OSM Communications. These facts were confirmed in an affidavit executed by defendant Ann Polansky and delivered to Magistrate Holly Fitzsimmons of this court at the conclusion of discovery.

In all respects the facts as set forth in these defendants Local Rule 56(a)1 Statement. Those facts indicated that defendants are entitled to a resolution on the merits as set forth in their joint motion for summary judgment.

As to plaintiffs claims regarding the applicable law that should be applied in this case the old adage seems to apply: when a litigant is faced with bad facts the best approach is to argue the law. That is precisely what plaintiffs have done. As plaintifft Janet Wainright's claims are so glaringly without merit defendants will not repeat their arguments in favor of summary judgment on her claims here and respectfully refer the court to all prior submissions on this point.

Plaintiff Donald Wainright does not (because he cannot) dispute the fact that he executed a contract with defendant OSM. (See Exhibit "B" attached to Joint Memorandum of Defendants

dated September 8, 2005). Further plaintiff cannot dispute the language of the employment contract that calls for the application of New York law. Finally he cannot dispute that his duties were performed in New York. Instead, plaintiff argues that he resides in Connecticut and that Connecticut law should apply. This has never been the measure for applying the law of a local jurisdiction unless the contract in dispute violates an articulated public policy of the jurisdiction in which the case was commenced. There is not one fact to justify this conclusion in the case at bar. As to defendant Russo-Williams, it is undisputed that she was an employee-at-will in New York and has no legitimate basis to assert that only Connecticut law should apply. This is so glaringly obvious that she does not even attempt to argue this point on her own behalf. Clearly violation of the Connecticut labor law statutes as set forth in plaintiffs' second cause of action have no bearing on this case and summary judgment must be granted to the defendants on this cause of action.

Plaintiffs next argue that only after receiving oral assurances from defendant Robert Polansky did they continue to fulfill their employment obligations. Although they never state when these oral assurances were made or even the exact nature of the oral assurances, they claim that these unspecified oral assurances constitute a personal guarantee of their salaries and benefits by defendant Robert Polansky. Recently, in *Carey & Associates v. Ernst,* 2005 NY Slip Op 07614 (1st Dept., October 18, 2005) the Appellate Division reviewed the status of part performance of an alleged oral guarantee. The court first mentioned the General Obligations long and the long established principal that an oral guarantee to answer for the debt of another is not enforceable unless it is in writing. The court noted further:

> However, under a long-standing exception to the statute, the promise need not be in writing if it is (1) supported by new consideration moving to the promisor and beneficial to him and, (2) the promisor has become in the intention of the parties a

> principal debtor primarily liable thereon (*Martin Roofing v Goldstein*, 60 NY2d 262,265 [1983], *cert denied* 466 US 905 [1984]; *Concordia Gen. Contr. v Peltz*, 11 AD3d 502, 504 [2004]).
>
> The proponent of the oral agreement has the burden or producing evidence showing consideration moving to the promisor . . . and that it was the intention of the parties that [the promisor] was to become primarily liable.

*Id*. at page 3.

Plaintiffs can fulfill neither prong of the standard. No new consideration moved to defendant Robert Polansky that was tangibly beneficial to him and further there was no manifestation overt, tacit or otherwise that would support the claim that defendant Polansky was to become principally liable to the plaintiffs for their salaries and benefits an obligation belonging solely to defendant OSM. The same argument would apply to plaintiffs' claims against defendant Israel Polansky.

The balance of plaintiffs' arguments adds nothing new to the underlying facts. Defendant OSM Communications was a start up company composed of the assets of a company that OSM purchased. As has been described repeatedly, millions of dollars were required to refurbish neglected signs and make existing installations fully functional. There were no guarantees or assurances made to plaintiffs that defendant OSM would be successful only that a good faith attempt would be made to re-launch the company. Plaintiffs can point to not one fact demonstrating otherwise. In order to accept plaintiffs' arguments, the court would have to conclude that the plaintiffs were guaranteed employment for life. This is a thoroughly absurd conclusion.

Nevertheless, to achieve defendants Robert Polansky and Israel Polansky's common desired goal to restart OSM's business, defendant Israel Polansky committed over $1M of his personal assets to the venture of which in excess of $747,000.00 was paid to plaintiffs in salary

and benefits. Investment of this amount demonstrates Israel Polansky's commitment and belief in the venture. Did it also demonstrate his guarantee to fund the venture until it succeeded? No!

Finally defendants meticulously laid out in their Local Rule 56 statement in support of their motion for summary judgment the testimony of plaintiffs Wainright and Russo-Williams detailing their wrongful taking of corporate property and password protecting their corporate computers without sharing their passwords with defendant OSM. In response plaintiff Wainright admits taking corporate property but claims that taking of the property did not harm the defendant OSM since the "system was without value or purpose". That is a judgment that plaintiff is not in a position to make. The property plaintiff Wainright took had value to the defendant OSM. That it was property that undisputedly belonged to OSM alone makes it a wrongful taking. There is no genuine issue that plaintiff Wainright took OSM's property. Once again the court need only look at plaintiff Wainright's own words. Plaintiff Wainright admitted in deposition testimony that he received written demands for the return of defendant OSM's property and that he consulted with his attorney who advised him not to do anything.

> A.   All I'm saying is that the letters that I received from Mr. Polansky after I had stopped coming into the New York office were for my [sic.] to return whatever he felt that I had that belonged to the company. And when I received that letter from him I consulted with my attorney who advised me not to do anything.

Deposition of Donald Wainright dated February 10, 2004 page 90, lines 16-22. See Exhibit "A" attached hereto.

If he possessed none of defendant OSM's property, it would have been a simple matter for plaintiff Wainright to write a letter in return and say so. He did not. Thus, aside from the other unequivocal testimony on this issue, this particular sworn statement certainly allows the court to conclude that plaintiff Wainright took defendant OSM's property and it was not returned

in the hope that it would be exchanged in return for a settlement of plaintiffs' demands. Defendants' have thus proven liability on their counterclaim through plaintiffs' Wainright and Russo-Williams' own words. Consequently, summary judgment in favor of liability on OSM's motion is entirely appropriate.

Finally, plaintiffs continue to fail to establish or recite any undisputed facts demonstrating any personal liability on the part of defendant Robert Polansky. Unverified innuendo about what happened in 1991 at In-Store Advertising does not establish any facts regarding what transpired at defendant OSM Communications, Inc. As a result, defendant Robert Polansky's motion for summary judgment must be granted.

DEFENDANT
OSM COMMUNICATIONS, INC. and
ROBERT E. POLANSKY

By: _____
Michael P. Goldsmith
38 West 21st Street – 5th Floor
New York, NY 10010-6977
Telephone: (212) 677-4441 ext.18
Fed. Bar No. phv0219
michael.p.goldsmith@verizon.net
Attorney for Defendants
OSM Communications, Inc. and
Robert E. Polansky

**CERTIFICATE OF SERVICE**

This is to certify that on this 21st day of November 2005 a copy of the foregoing Reply Memorandum was sent by electronic mail to:

| | |
|---|---|
| Robert E. Arnold, Esq. | J. Michael Sulzbach, Esq. |
| Law Offices of Robert E. Arnold, LLC | 385 Orange Street |
| 205 Church Street, Suite 310 | New Haven, CT 06511 |
| New Haven CT 06510-1805 | jms@sulzbachlaw.com |
| arnoldlawfirm@msn.com | |

_____
Michael P. Goldsmith, Esq.

EXHIBIT A

15   passwords and a quid pro quo?
16      A.   All I'm saying is that the letters that I
17   received from Mr. Polansky after I had stopped coming
18   in to the New York office were for my to return
19   whatever he felt that I had that belonged to the
20   company.  And when I received that letter from him I
21   consulted my attorney who advised me not to do
22   anything.
23      Q.   Okay.  And at the present time do you
24   have....  Well, what are the passwords to the computers
25   that you had at that time?

1       A.   I don't know.
2       Q.   Do you have any documentation or way of
3    finding out what those passwords are?
4       A.   There's a possibility, yes.  I don't know
5    honestly.
6       Q.   Okay.  And if you were to diligently look
7    for it, how would you go about determining what that
8    password was?
9       A.   I would look to see if I had any notes as to
10   what the passwords were.
11      Q.   And at the time you were having these
12   discussions in which you were prepared at that point
13   to turn over the passwords in exchange for what was
14   owed to you?