UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DONALD WAINRIGHT, | : | |
| JANET WAINRIGHT and | : | |
| DEBORAH A. RUSSO-WILLIAMS | : | |
| | : | |
| | : | |
| v. | : | CIV. NO. 3:01CV2158 (WWE) |
| | : | |
| OSM COMMUNICATIONS, INC., | : | |
| ISRAEL H. POLANSKY, | : | |
| ROBERT E. POLANSKY, and | : | |
| ANNE POLANSKY | : | |
| | : | |
| | : | |
| | : | |

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

In this action, the plaintiffs, Donald and Janet Wainright (husband and wife) and

Deborah Russo-Williams, seek damages against the defendants, OSM

Communications, Inc., Israel H. Polansky, Robert E. Polansky (father and son) and

Anne Polansky (wife of Robert Polansky), to recover wages, expenses and benefits

owed to the plaintiffs.  Specifically, the plaintiffs allege breach of contract (count one),

violation of the Connecticut General Statutes sections 31-71b and 31-72 (count two),

breach of guarantee made by Israel Polansky (count three), and fraudulent inducement

(counts four and five).   The plaintiffs argue that the individual defendants are liable due

to the fact that OSM is merely an "alter ego" and instrumentality of the defendants and

that the plaintiffs should, therefore, be entitled to "pierce the corporate veil" and hold the

defendants liable.

The defendants have each moved for summary judgment on all counts of the complaint.  OSM, in its counter-claims, asserts that the plaintiffs Wainright and Russo-Williams breached their duties to their employer, that Wainright breached his contract and duty of good faith and fair dealing, and that as a result of the plaintiffs' actions, OSM has been damaged and has lost millions of dollars in income and business opportunities.  The plaintiffs move for summary judgment on all of OSM's claims.[1]

In their cross-motion for partial summary judgment, the plaintiffs argue that the defendants are liable to them by virtue of the doctrine of "piercing the corporate veil," that OSM breached its contract with the plaintiffs, and that the defendants committed violations of Connecticut General Statutes sections 31-71b and 31-72.

---

[1]As to the plaintiff Janet Wainright's claims against the defendants, the Court finds that there was no relationship between Janet Wainright and the defendants that could sustain any claims.  Janet Wainright was never in contact with the defendants, was never under contract with them and, in sum, had no relationship with them.  As a result, the Court finds that Janet Wainright's claims against any of the defendants are too attenuated to establish a cause of action and will grant the defendants' motion for summary judgment as to Janet Wainright's claims.

Similarly, as to the plaintiffs' claims against Anne Polansky, the Court finds that there is no relationship between Anne Polansky and any of the plaintiffs.  She is not affiliated with OSM, was never in contact with any of the plaintiffs and had neither a contractual nor any other relationship with them.  As a result, the Court finds that the claims against Anne Polansky are groundless and will grant summary judgment as to the claims against her.

Hereafter, the Court's reference to the plaintiff "Wainright" shall indicate only the plaintiff Donald Wainright.  All references to "the plaintiffs" shall indicate only Donald Wainright and Deborah Russo-Williams.

**BACKGROUND**

The parties have submitted memoranda, statements of facts, affidavits and exhibits which demonstrate that the following facts are not in dispute.

In 1986, Israel Polansky and his son Robert Polansky started a corporation known as In-Store Advertising, Inc. ("ISA"), which was a retailer of advertising services. In 1990, ISA made a public offering, which later became the subject of an SEC investigation.

On the same day that the SEC filed its complaint, Robert Polansky, without an admission of wrongdoing, consented to the entry of a permanent injunction prohibiting future violations of various securities statutes.

In 1993, all ISA's assets were purchased by an outside corporation known as Electronic Marketing and Retail Communications Inc ("EMARC").

On June 10, 1993, Israel and Robert Polansky formed a second corporation known as OSM Communications, Inc. ("OSM"), which was organized under the laws of Delaware. Israel Polansky, the named Director, received 93% of OSM shares. Robert Polansky, the named President, received 7% of the shares. OSM's stated purpose was to sell satellite systems in the retail environment.

On April 18, 1996, OSM purchased the original ISA business from its current owner, VALASSIS. As a condition of the VALASSIS purchase agreement, OSM was required to obtain a $250,000 line of credit, which it secured from Ameristar Capital Corporation. Israel Polansky invested personal funds in the start-up of OSM.

In a memo dated July 23, 1996, while Wainright was still living in Michigan, Robert Polansky set forth the terms of Wainright's employment to begin on September

3, 1996.  These terms were later reduced to writing in an Employment Agreement signed by Polansky and Wainright in October, 1996.  The contract provided that it was to be governed by the law of the state of New York.  Its terms included a base salary of $100,000, a 25% guaranteed bonus, medical coverage, stock options, payment of moving expenses, and reimbursement of a shortfall in the sale of Wainright's Michigan home.  The employment period in question commenced on November 4, 1996 and expired November 30, 1997, with continuation for successive periods of one year unless either OSM or Wainright gave notice of intent to discontinue the contract.  The contract gave OSM the right to terminate Wainright for cause, which term included the conviction of a crime, any act of fraud or embezzlement against the corporation, malfeasance, negligence, and failure to follow directives or meet performance objectives.  A termination made without cause required a six month severance period.

Wainright sold his home at a loss and moved from Michigan to work for OSM. Several paychecks issued in 1997 were returned for insufficient funds.

In a memo dated August 3, 1996, Robert Polansky set forth the terms of an employment agreement with Russo-Williams, which terms included a $60,000 base salary, a guaranteed 20% bonus, medical and dental insurance, and participation in OSM's stock option plan.  Russo-Williams' title was to be Manager of Customer Relations.  The terms of this memo were never reduced to a written contract.  In 1997, Russo-Williams began to receive several payroll checks that were returned for insufficient funds.

In a memo to Russo-Williams dated July 15, 1998, Robert Polansky confirmed that she would receive an increase in her base salary to $75,000, and a payment of a

$13,000 bonus to be paid at the rate of $500 per pay period.  Again, these payroll checks began to be returned for insufficient funds.

OSM banking records reveal that funds wired into OSM's account were liquidated into cash by withdrawals at various banks.  Robert Polansky occasionally used funds from the OSM checking account to pay for his living expenses.

OSM is no longer operational.

## ARGUMENT

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

### 1.    Defendants' Motions for Summary Judgment

As stated above, the plaintiffs' complaint asserts five causes of action: breach of contract, failure to pay wages in violation of Conn. Gen. Stat. sections 31-71b and 31-72, breach of guarantee, and two counts of fraudulent inducement. The defendants, in separate motions, have moved for summary judgment as to all of the plaintiffs' claims.

The defendants OSM and Robert Polansky argue that they are entitled to summary judgment on the first cause of action because plaintiffs have not proved that OSM was merely an alter ego and instrumentality of the individual defendants and that the plaintiffs are thus barred from piercing the corporate veil and holding them personally liable, and that the corporate defendant, OSM, did not breach any contract with either Wainright or Russo-Williams. As to the second cause of action, the defendants claim that New York substantive law controls the present case and, therefore, the court may not apply Connecticut statutory law to the matter. Robert Polansky argues that he is entitled to summary judgment on the plaintiffs' third cause of action because it is barred by the statute of frauds; as to the fourth claim, Robert Polansky argues that the plaintiffs have suffered no damages and, therefore, do not have a cause of action. Finally, Robert Polansky argues that summary judgment should be granted as to the plaintiffs' fifth cause of action because it, too, is barred by the statute of frauds.

By means of its counterclaims, OSM asserts that it should be granted summary judgment on the claims that Wainright and Russo-Williams breached their duties to their employer, that Wainright breached his contract and duty of good faith and fair dealing by means of conduct that amounted to theft, that as a result of Wainright's and

Russo-Williams' conduct, OSM has been damaged and lost millions of dollars in lost income and business opportunities, and that New York is the substantive law that should be applied to this action. The plaintiffs move for summary judgment on all of OSM's counterclaims.

Defendants Israel Polansky and Anne Polansky have filed separate motions for summary judgment and a joint memorandum in support of these motions, in which they each assert that their noninvolvement in the activities of OSM defeat the alter ego and instrumentality claims upon which the first and second causes of action rely; that they had no contact with the plaintiffs prior to their employment at OSM, therefore rendering it impossible for the plaintiffs to have relied on any possible guarantees allegedly offered by Israel Polansky; that the plaintiffs' claims against them are barred by the statute of frauds; and, as to the fifth cause of action, that their lack of communication with the plaintiffs prior to their employment at OSM makes it impossible for the plaintiffs to have relied on any alleged guarantee offered by Israel Polansky. The Court finds genuine issue as to material fact regarding Israel Polansky's involvement in the plaintiffs' employment and, therefore, will deny Israel Polansky's motion for summary judgment.[2]

### A.    First Cause of Action: Breach of Contract

The defendants argue that they may not be held liable as to the plaintiffs' first cause of action: that OSM was never the "alter ego" or "mere instrumentality" for the defendants Robert Polansky and Israel Polansky and, therefore, the plaintiffs are not

---

[2]As stated, *supra*, the Court will grant Anne Polansky's motion for summary judgment.

entitled to "pierce the corporate veil" in order to find such liability. Furthermore, the defendants claim that OSM did not breach any contractual relationship with the plaintiffs.

Of first concern is the choice of law to be applied in this case. The plaintiffs refer to Connecticut law and the defendants argue that New York law is the substantive law to be applied. The Court finds that under either choice of law, the outcome of the defendants' arguments remains the same. Thus, the Court need not address the defendants' argument on this matter. Accordingly, the Court will refer to both Connecticut and New York law throughout this ruling.

In order to apply the doctrine of piercing the corporate veil, the plaintiff must prove that the corporation was merely an entity, the sole purpose of which was to act as the instrumentality for the actions of officers of the corporation. In order to determine whether the corporation was, indeed, an instrumentality or "alter ego" of the corporate officer, Connecticut law has determined that the court must apply the "identity test." "In order to prevail using the identity test, the plaintiff must demonstrate that there was such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun." Hess v. Balfour, 822 F.Supp. 84, 86 (D.Conn. 1993). Similarly, "New York law allows the corporate veil to be pierced *either* when there is fraud *or* when the corporation has been used as an alter ego." Packer v. TDI Systems, Inc., 959 F.Supp. 192, 202 (S.D.N.Y. 1997). The proper criteria a jury can use in determining whether a corporation is a mere instrumentality or alter ego of the individual officers or directors include:

> (1) the absence of formalities which are the part and parcel
> of normal corporate existence, i.e., the issuance of stock,

8

election of directors, the keeping of corporate records, etc.,
(2) inadequate capitalization, (3) personal use of corporate
funds, and (4) the perpetration of fraud by means of the
corporate vehicle.

Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir. 1984).  The
plaintiffs bear the burden of proving that the corporate veil should be pierced.  Canario
v. Lidelco, Inc., 782 F.Supp. 749, 759 (E.D.N.Y. 1992).

In the present case, the plaintiffs' allegations encompass all of the
considerations set forth in Heller.  They claim that the defendants Israel Polansky and
Robert Polansky, as sole shareholders of OSM and as its director and president,
respectively, failed to follow corporate formalities in that they did not keep proper
corporate records, that OSM was capitalized inadequately, that Robert Polansky
personally used corporate funds, and that they used OSM in order to perpetrate fraud
against the plaintiffs.  Specifically, the plaintiffs argue that the defendants have failed to
produce all relevant corporate records, that OSM's undercapitalization was the reason
for their cause of action, and that Robert Polansky withdrew corporate moneys from
corporate accounts by means of his ATM card and used such funds for personal
expenditures.  The defendants admit, *inter alia*, that Robert Polansky did use his ATM
card to withdraw OSM corporate funds from corporate accounts and that OSM was
undercapitalized.  They argue, however, that neither Israel Polansky nor Robert
Polansky overreached in their respective capacities of director and president of OSM.
Because of these admissions and disputed facts, the Court finds that there are disputed
facts concerning the piercing of the corporate veil.  Accordingly, the Court will deny the
defendants' motion for summary judgment with regard to the plaintiffs' first cause of

9

action.

**B.    Second Cause of Action: Breach of Conn. Gen. Stat. Sections 31-71b and 31-72**

Because the Court is considering the parties' choice of law analysis in dispute and is evaluating the arguments pursuant to both New York and Connecticut law, the Court will, despite the defendants' objections, consider the plaintiffs' claims under Connecticut statutory law.

By asserting claims pursuant to Connecticut General Statutes sections 31-71b[3] and 31-72,[4] the plaintiffs argue that the defendants failed to pay them their weekly wages and that they are therefore entitled to recoup and to recover damages in a civil action. The defendants admit that they did stop paying the plaintiffs their weekly wages on time and did not pay bonuses because of the undercapitalization of OSM.

However, the defendants argue again that the plaintiffs are barred from asserting this claim because they are not entitled to pierce the corporate veil and explore their individual liability.  Because the Court has found that the plaintiffs may be entitled to pierce the corporate veil, they have the right to pursue further their claims as to the

---

[3]Conn. Gen. Stat. Section 31-71b provides, in relevant part: "(a) Each employer, by himself, his agent or representative, shall pay weekly all moneys due each employee on a regular pay day, designated in advance by the employer, in cash, by negotiable checks, or, upon an employee's written request, by credit to such employee's account in any bank which has agreed with the employer to accept such wage deposits."

[4]Conn. Gen. Stat. section 31-72 provides, in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action."

liability of individual defendants.  The Court will deny the defendants' motion for summary judgment as to the plaintiffs' second cause of action.

### C.    Third Cause of Action: Breach of Guarantee

The plaintiffs allege that their acceptance and retention of employment with OSM was in reliance on Israel Polansky and Robert Polansky's guarantees of their financial obligations to the plaintiffs.

The defendants argue that this cause of action is barred by the statute of frauds. Under both Connecticut and New York law on the subject, the Court finds this argument unavailing.

Pursuant to Connecticut law, the statute of frauds requires that a contractual agreement be in writing and signed by the party to be charged.  However, there are exceptions to this rule.  They include, *inter alia*, the doctrine of part performance and those contracts of employment that can be completed within a year.  Conn. Gen. Stat. section 52-550.[5]  Here, the plaintiffs rely on the doctrines of part performance and equitable estoppel to serve as exceptions to the statute.  "Part performance" is "an essential element of the estoppel exception to the statute of frauds." Glazer v. Dress Barn, Inc., 274 Conn. 33, 63 (2005).  "Equitable estoppel is a doctrine that operates in many contexts to bar a party from asserting a right that it otherwise would have but for

---

[5]Conn. Gen. Stat. section 52-550 provides, in relevant part:  "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: (1) Upon any agreement to charge any executor or administrator, upon a special promise to answer damages out of his own property; (2) against any person upon any special promise to answer for the debt, default, or miscarriage of another;. . . (5) upon any agreement that is not to be performed within one year from the making thereof. . . ."

its own conduct." Id., 60. "When the statute of frauds is pleaded, the doctrine of

equitable estoppel may be applied to prevent the use of the statute of frauds to

accomplish a fraud." First Connecticut Small Business Investment Co., Inc. v. Arba,

Inc., 170 Conn. 168, 174-75 (1976).

To establish a claim of equitable estoppel and avoid the application of the statute

of frauds, the court requires that a party assert evidence of acts that were committed in

partial performance of the contract.

> The acts of part performance must be such as are done by
> the party seeking to enforce the contract, and with the design
> of carrying the same into execution, and must also be done
> with the assent, express or implied, or knowledge of the other
> party, and be such acts as alter the relations of the parties.
> The acts must also be of such character that they can be
> naturally and reasonably accounted for in no other way than
> by the existence of some contract in relation to the subject
> matter in dispute.

Glazer, 60-61. In order to fulfill this exception, two separate but related criteria must be

satisfied that warrant precluding a party from asserting the statute of frauds. First, part

performance satisfies the evidentiary function of the statute of frauds "being referable to

and consistent with the oral agreement." H. Pearce Real Estate Co., Inc. v. Kaiser, 176

Conn. 442, 443 (1979). Second, "the conduct alleged to have been induced by reliance

on the oral agreement must be of such character that repudiation of the contract by the

other party would amount to the perpetration of a fraud." Id., at 443.

Here, the plaintiffs argue that but for the oral agreement, they would not have

stayed at OSM and that remaining in their employment constitutes part performance in

reliance on the agreement between the parties. The plaintiffs claim they relied on the

personal guarantees of the defendants and acted upon such guarantees in that they

12

remained in the defendants' employ without remuneration, depending instead on the defendants' oral assurances that they would be paid. The defendants, as stated, *supra*, do not contradict the assertion that there was a lack of funds necessary to pay the plaintiffs. Accordingly, the doctrine of part performance precludes this claim from being barred by the statute of frauds. This presents the Court with a triable issue of fact as to the plaintiffs' reliance and the defendants' perpetration of fraud. Thus, the Court will deny the defendants' motion for summary judgment on this claim.

Furthermore, the statute of frauds does not bar actions for recovery pursuant to oral agreements when the contract of employment can be completed within one year. "[A]n oral contract that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract of indefinite duration for the purposes of the statute of frauds. Like a contract of indefinite duration, such a contract is enforceable because it is outside the proscriptive force of the statute regardless of how long completion of performance will actually take." C.R. Klewin Co., Inc. v. Flagship Properties, Inc., 220 Conn. 569, 583-84 (1991). Here, the written employment agreement between Wainright and Robert Polansky explicitly states that the Employment Agreement may expire at one year and, additionally, that Wainright could be terminated without cause. Clearly, the employment period in question could be completed within one year. Moreover, the alleged oral agreement merely extended Wainright's employment - that established through the written Employment Agreement - for an indefinite period of time. Consequently, the oral agreement controlling this employment period was not subject to the writing requirement of Conn. Gen Stat. section 52-550 and is not barred.

13

With regard to Russo-Williams, the one-year exception also prevents her claim from being barred by the statute of frauds.  As an at-will employee, Russo-Williams could be terminated at any time, including within the first year of her employment.

> The critical test, according to the Connecticut Supreme Court, is whether by its terms the agreement is not to be performed within a year.  Therefore, an oral contract that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract for an indefinite duration for the purposes of the statute of frauds.

Pippett v. Waterford Development, LLC, 2004 WL 491044 *2 (D.Conn.)

New York law sets forth exceptions to its own statute of frauds: New York General Obligations Law sections 5-701 (a)(1) and (a)(2).[6]  They include the doctrine of part performance and the exception for employment that can be completed within one year.

The New York statute of frauds includes the provision that contracts that may be completed within one year are not barred by the statute.  "New York courts have created rules of construction by which the one-year provision is applied narrowly so as to give effect to oral contracts which are capable of being performed within one year.  The statutory bar is not applicable unless an agreement by its terms is not to be performed within one year."  Stetson v. Pfaltzgraff Co., Inc., 1991 WL 275648 *2 (S.D.N.Y.)  For the reasons set forth above, the Employment Agreement was constructed so that Wainright's employment could be completed within one year and the plaintiffs argue that the defendants' oral agreement was made in furtherance of that agreement.  Russo-

---

[6]Section 5-701 provides: Agreements to be in writing (a) Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: (1) By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime; (2) Is a special promise to answer for the debt, default or miscarriage of another person."

Williams' at-will status rendered her employment capable of being completed within one year.  Hayden v. Zarkadas, P.C., 795 N.Y.S.2d 278, 279 (2005).  Accordingly, the oral agreements between the defendants and Wainright and Russo-Williams are not barred by the New York statute of frauds.

Similarly, the New York statute of frauds provides the exception for part performance.  "An oral agreement may be enforceable despite the lack of writing where a plaintiff's part performance is unequivocally referable to that oral agreement."  Carey and Associates v. Ernst, 802 N.Y.S.2d 160, 163 (2005).  As explained, *supra*, both Wainright and Russo-Williams' continued employment at OSM raise triable issues of fact as to whether their part performance constituted unequivocal reliance on the alleged oral agreements offered by the defendants.

### D.    Counts Four and Five: Fraudulent Inducement

The plaintiffs argue that their acceptance and retention of their employment was also in reliance upon oral guarantees made by defendant Israel Polansky. The plaintiffs claim that these guarantees amounted to fraudulent inducement.  Specifically, the plaintiffs allege that Israel Polansky promised them certain benefits regarding their salaries, bonuses and reimbursement for expenses.  Israel Polansky argues that his involvement in OSM and contact with both plaintiffs was minimal and, therefore, he should not be found liable for fraudulent inducements.  For the reasons set forth above regarding oral guarantees, the Court finds that there are genuine issues of material fact regarding defendant Israel Polansky's involvement with OSM and his inducement of both plaintiffs and will deny the defendants' motion for summary judgment.[7]

In sum, construing all facts in favor of the nonmoving party, the Court finds that

---

[7]As indicated, *supra*, all claims as to Janet Wainright will be dismissed.

there are genuine issues of material facts as to all counts of the plaintiff's complaint and, therefore, the defendants' motion for summary judgment on all these counts will be denied.

### 2. Defendant OSM's Counter-Claims

The defendant OSM argues that the plaintiffs Wainright and Russo-Williams: breached their duties to their employer (count one); that Wainright breached his contract and duty of good faith and fair dealing by, among other things, conduct that amounted to theft (count two); that as a result of Wainright's and Russo-Williams' actions, OSM has been damaged and has lost millions of dollars in income and business opportunities (count three); and that New York law is the proper substantive law to apply to the matter and that the statute of frauds bars the plaintiffs' claims as to the contracts between OSM and Wainright and OSM and Russo-Williams (count four). The plaintiffs counter that there are material facts in dispute relating to the defendant's arguments, that there is a question as to the proper choice of law, and that there is no evidence as to the veracity of OSM's claims.

The Court finds that OSM's first, third and fourth counter-claims are ostensibly redundant as to the claims asserted in the defendants' original motion for summary judgment and, as the Court found that there are genuine issues of material fact regarding those claims, the Court will deny summary judgment on the defendant OSM's counter-claims.

As to OSM' second counter-claim, that Wainright breached the contract and his duty of good faith and fair dealing by means of conduct that amounted to theft, the Court also finds there are questions of fact. The "theft" in question concerns Wainright's alleged confiscation and retention of the defendants' software and computer passwords. Wainright admits that he may be in possession of the software, but claims that it was

merely a back-up copy saved off site in case there was some "catastrophic failure" on site. He claims that the originals were still in the possession of the defendants. He asserted in his deposition that he did not have any "proprietary software" and that at the present time he did not remember his password. The Court finds that there is a question of fact as to Wainright's intent regarding his possession of the software and his password and whether it amounted to theft, as the defendant claims. Accordingly, the Court will deny summary judgment as to this counter-claim.

3.      **Plaintiffs' Motion for Summary Judgment**

In their cross-motion for partial summary judgment, the plaintiffs assert three counts: that the individual defendants are liable to the plaintiffs by virtue of the doctrine of piercing the corporate veil (count one); that OSM breached its contract with the plaintiffs (count two); and that the defendants violated Connecticut General Statutes sections 31-71b and 31-72 (count three). The plaintiffs do not move for summary judgment on the fourth and fifth claims of their complaint; namely, those claims sounding in fraudulent inducement. The defendants move for summary judgment on all of the plaintiffs' claims. For the same reasons asserted above regarding the plaintiffs' opposition to the defendants' motion for summary judgment, the Court finds genuine issues of material fact and, consequently, will deny the plaintiffs' motion.

**CONCLUSION**

For the foregoing reasons, the Court  DENIES the plaintiffs' motion for summary judgment [Doc. # 105]. The Court GRANTS defendants Robert Polansky and OSM's motion for summary judgment [Doc. # 124] as to the claims by Janet Wainright against them, but otherwise DENIES the motion as to all other claims made by plaintiffs against them, and as to OSM's counterclaims. The Court GRANTS defendant Israel Polansky's

17

motion for summary judgment [Doc. # 126] as to the claims of plaintiff Janet Wainright, but DENIES his motion as to all other claims.  The Court GRANTS defendant Anne Polansky's motion for summary judgment on the claims against her by plaintiffs [Doc. # 127].

SO ORDERED this _22nd__ day of March, 2006 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge